*It has been required the signature certification*

***STATEMENT***

I, the undersigned, ***VIDINEAC EUGEN CONSTANTIN***, in my capacity as ***coordinating partner at the law firm "Vidineac și asociații"***, with its principal office in Brașov, 2 Petru Maior Street, Brașov County, and a branch office in Bucharest, 23 Regina Maria Boulevard, Block A, 1st floor, Flat 3, Sector 4, and in my capacity as ***the chosen defence counsel for Messrs Tate Emory Andrew and Tate Tristan in criminal cases Nos. 1305/D/P/2022 and 2557/D/P/2023*** currently pending before the Public Prosecutor's Office attached to the High Court of Cassation and Justice – Directorate for the Investigation of Organised Crime and Terrorism, identified by identity card number BV1031915, with personal identification number 1820330046197, ***declare*** on my own responsibility that, in criminal case No. 1305/D/P/2022, Messrs Tate Emory Andrew and Tate Tristan were remanded in custody from 30 December 2022 until 31 March 2023.

On 31 March 2023, the Bucharest Court of Appeal, in case No. 8921/3/2023, issued Order No. 120/CO-DL, by which the measure of pre-trial detention was replaced with house arrest for Mr Tate Emory Andrew and Mr Tate Tristan.

House arrest was ordered for a period of 30 days, from 31 March 2023 until 29 April 2023, during which Mr Tate Emory Andrew and Mr Tate Tristan must comply with the following obligations:

- To appear before the investigating authority, the judge for rights and freedoms, the preliminary hearing judge or the court whenever summoned;

- Not to communicate with the other co-defendants, the alleged victims or the witnesses in the case by any means, either directly or indirectly.

Following this decision, Mr Tate Emory Andrew and Mr Tate Tristan were released from custody and escorted to their homes, where they were to serve their house arrest, where they were monitored and checked for compliance with this measure by the supervisory body within the Voluntari City Police, which found no breach of the obligations imposed by the judge.

The house arrest order was successively extended by 30 days at a time, and on 4 August 2023, the Bucharest Court of Appeal, by means of Order No. 428/CP handed down in case No. 18906/3/2023/a1. 2, ordered ***the admission of the appeals*** lodged by Messrs Tate Emory Andrew and Tate Tristan and ordered ***the replacement of the house arrest measure with the preventive measure of judicial supervision for a period of 60 days***, from 4 August 2023 to 2 October 2023.

In the terms of the measure, the Bucharest Court of Appeal has laid down the following obligations:

- To appear before the preliminary chamber judge or the court whenever summoned;

- To inform immediately the judicial authority that ordered the measure or before which the case is pending of any change of residence;

- To report to the police authority responsible for supervision, namely the police station within the territorial jurisdiction of their place of residence, in accordance with the supervision schedule drawn up by the police authority or whenever summoned;

- Not to leave the territorial boundaries of Ilfov County and the Municipality of Bucharest, except with the prior authorisation of the preliminary chamber judge or the court;

- Not to approach the other co-defendants, the alleged victims or the witnesses in the case;

- To provide regular updates on their means of support;

- Not to possess, use or carry weapons.

To monitor compliance with these obligations, the supervisory body within the Voluntari City Police, Ilfov County, was retained.

The judicial supervision measure was extended successively, every 60 days, in respect of Mr Tate Emory Andrew and Mr Tate Tristan; and, by the Order handed down on 23 November 2023 in case no. 18906/3/2023/a1. 6, the Bucharest Tribunal ordered, in respect of both defendants, Tate Emory Andrew and Tate Tristan, ***the replacement of the obligation not to leave the territorial boundaries of Ilfov County and the Municipality of Bucharest with the obligation not to leave the territory of Romania***. This decision became final following the rejection of DIICOT's appeal by the Bucharest Court of Appeal in Order No. 669 of 8 December 2023.

I would like to point out that during the enforcement of the preventive measures, namely on 15 June 2023, the case prosecutor issued the indictment in criminal investigation file No. 1305/D/P/2022, ordering the committal for trial of the defendants Tate Emory Andrew and Tate Tristan, with the indictment to be reviewed for its legality and regularity by the preliminary chamber judge, an intermediate procedural stage in the Romanian legal system, between the criminal investigation stage and the trial on the merits.

Consequently, case no. 18906/3/2023/a1 has been registered with the Bucharest Tribunal.

I would like to point out that the prosecutor in charge of the case has also ordered the separation of the proceedings relating to the offences of money laundering, aiding and abetting the perpetrator, influencing statements, trafficking in children and human trafficking, resulting in the formation of criminal case No. 2557/D/P/2023 before DIICOT, with the offences subject to the separation to be investigated during the criminal investigation stage.

Against the Indictment issued in case No. 1305/D/P/2022 (in which Tate Emory Andrew and Tate Tristan were subject to preventive measures), the defendants Tate Emory Andrew and Tate Tristan put forward defences during the preliminary hearing, arguing that it had been drawn up unlawfully and irregularly, and by Order No. 804/CP of 19 December 2024 handed down by the Bucharest Court of Appeal in case No. 18906/3/2023/a1, it was definitively ordered that ***the defendants' challenges to the indictment be upheld and the case file be returned to the prosecuting prosecutor.***

Returning to the chronology of the enforcement of the preventive measures, I state that from 23 November 2023, when the last amendment to the obligations of the defendants Tate Emory Andrew and Tate Tristan under judicial supervision took place, until 25 February 2025, the judicial supervision measure was successively extended by 60 days at a time, with no further changes being made to the defendants' obligations.

On 25 February 2025, the case prosecutor issued, in criminal case No. 1305/D/P/2022, an order lifting the obligation on Messrs Tate Emory Andrew and Tate Tristan not to leave the territory of Romania.

***I declare that the lifting of the ban on leaving Romanian territory was ordered following the prosecutor's analysis of all the conditions laid down by law for ordering such a measure but, more importantly, following the prosecutor's finding that the defendants Tate Emory Andrew and Tate Tristan have strictly complied with all the obligations imposed on them by the Romanian judicial authorities since the very outset of the preventive measures, whilst also noting that there is no risk of them absconding from criminal prosecution or in any way obstructing the course of justice***.

Thus, I quote from the Order issued by the prosecutor, in which he states that "*specifically, it is considered that there are no plausible grounds for believing that they intend to evade criminal prosecution and trial; on the contrary, they have consistently demonstrated an interest in the accurate establishment of the facts and the resolution of this case*."

Subsequently, by Orders issued on 1 April 2025, 23 May 2025, 25 July 2025 and 30 September 2025, the judicial supervision measure imposed on Mr Tate Emory Andrew and Mr Tate Tristan was extended for periods of 60 days each, until 29 November 2025, with the defendants' obligations remaining unchanged from those in place at the time the requirement not to leave Romanian territory was lifted.

On 27 November 2025, in criminal case No. 1305/D/P/2022, an order was issued extending the judicial supervision measure in respect of Mr Tate Emory Andrew and Mr Tate Tristan for a period of 60 days, from 30 November 2025 to 28 January 2026. At the same time, on the same date, the obligation not to contact the co-defendants in the case was lifted.

Subsequently, by Orders dated 23 January 2026 and 27 March 2026 issued in criminal case 1305/D/P/2022, the judicial supervision measures imposed on Mr Tate Emory Andrew and Mr Tate Tristan were extended for periods of 60 days, until 28 May 2026.

Mr Tate Emory Andrew and Mr Tate Tristan lodged an appeal against the Order of 27 March 2026, which was ***upheld*** by the ruling handed down on 6 April 2026 in case no. 11858/3/2026 by the Bucharest Tribunal, ordering the ***revocation of the preventive measure of judicial supervision*** imposed on them.

I would like to note that the defendants, Tate Emory Andrew and Tate Tristan, complied in a timely and thorough manner with all the obligations imposed upon them under the preventive measures to which they were subject from 30 December 2022 until 6 April 2026, as evidenced by the assessment issued by the supervisory authority on 20 July 2026, as well as by the case prosecutor's observations which I have cited above.

Drafted today, the signature certification date, at the notary office "Popovici & Agachi" based in Bucharest Municipality, No. 94 Soldat Ghita Serban Street, 1st floor, Sector 3, in 3 (three) copies, out of which 1(one) copy is kept in the notary office archive and 2 (two) copies were issued to the party.

Declarant
***LAWYER VIDINEAC EUGEN CONSTANTIN***
*Illegible signature*

---

ROMANIA
National Association of Notaries Public
Professional Partnership of Notaries Public "Popovici & Agachi"
Operating Licence No. 280/14.08.2024
Head office: Bucharest, No. 94 Soldat Ghita Serban Street, 1st floor, Sector 3
Phone: 0747.046.863

**SIGNATURE CERTIFICATION NO. 09**

Year 2026, month August, day 06

I, **POPOVICI ALEXANDRA**, notary public within the notary office "Popovici & Agachi", based in Bucharest Municipality, No. 94 Soldat Ghita Serban Street, 1st floor, Sector 3, at the request of the party interested in authenticating this document, I went to the address from Bucharest Municipality, No. 24 Regina Maria Boulevard, Sector 4, where I found and identified

- **Mr**. **VIDINEAC EUGEN-CONSTANTIN**, a Romanian citizen, residing in Jud. Braşov, Mun. Braşov, Str. Colinei, Nr. 6, Sc. B, Ap. 6, identified with Identity Card no. BV1031915 issued by SPCLEP (Local Register of Personal Records) Braşov on 20.11.2025, Personal Identification Number 1820330046197, legal representative of the law firm "Vidineac si asociatii", with its principal office in Brașov, 2 Petru Maior Street, Brașov County, and a branch office in Bucharest, 23 Regina Maria Boulevard, Block A, 1st floor, Flat 3, Sector 4, Tax Identification Number 49492011,

and signed the 3 (three) copies of the document, the contents of which are known, drawn up by notary office.

Pursuant to art. 12(e) and art. 148 of the Law on Notaries Public and Notarial Activity No. 36/1995, republished, as subsequently amended and supplemented, the signature on this document is hereby authenticated.

A fee of 500 lei + 105.00 lei VAT was charged, under tax receipt No. 22973/2026.

**NOTARY PUBLIC,**

**POPOVICI ALEXANNDRA**

(signature, stamp)

BLANK PAGE

I, the undersigned **BADII ELENA-IRINA**, a sworn interpreter and translator for the **ENGLISH** and **SPANISH** languages, according to authorisation no. 17039 of 19.12.2008, issued by the Romanian Ministry of Justice, do hereby certify that this is a true and accurate translation from **ROMANIAN** into **ENGLISH** of the text that was presented to me, that such text was translated in full, without omissions, and that its content and meaning were not altered in the translation.

