VIDINEAC ASOCIAȚII

SOCIETATE CIVILĂ DE AVOCAȚI

*It has been required the signature certification*

***STATEMENT***

I, the undersigned, ***VIDINEAC EUGEN CONSTANTIN***, in my capacity as ***coordinating partner at the law firm "Vidineac și asociații"***, with its principal office in Brașov, 2 Petru Maior Street, Brașov County, and a branch office in Bucharest, 23 Regina Maria Boulevard, Block A, 1st floor, Flat 3, Sector 4, and in my capacity as ***the chosen defence counsel for Messrs Tate Emory Andrew and Tate Tristan in criminal cases Nos. 1305/D/P/2022 and 2557/D/P/2023*** currently pending before the Public Prosecutor's Office attached to the High Court of Cassation and Justice – Directorate for the Investigation of Organised Crime and Terrorism, identified by identity card number BV1031915, with personal identification number 1820330046197, ***declare*** on my own responsibility that criminal case No. 2557/D/P/2023 was opened following the separation of the case, by means of the indictment issued on 15 June 2023 in criminal case No. 1305/D/P/2022, relating to the offences of money laundering, aiding and abetting the perpetrator, influencing witness statements, child trafficking and human trafficking, with the criminal investigation into these latter offences to be conducted within criminal case No. 2557/D/P/2023.

I therefore wish to make this sworn statement setting out the preventive measures instituted and implemented by my clients, Tate Emory Andrew and Tate Tristan, following the opening of case No. 2557/D/P/2023.

I note that, upon the opening of criminal case No. 2557/D/P/2023, Mr Tate Emory Andrew and Mr Tate Tristan had preventive measures imposed on them simultaneously in both cases, as follows.

1. By the detention orders dated 21 August 2024 issued in criminal case No. 2557/D/P/2023 by DIICOT, Mr Tate Emory Andrew and Mr Tate Tristan were ordered to be detained for a period of 24 hours, with a view to the prosecutor submitting a request to the Bucharest Tribunal to issue a pre-trial detention warrant against them. On the same date, Tate Emory Andrew and Tate Tristan became defendants in case No. 2557/D/P/2023. – Annex 1

2. By means of the ruling dated 23 August 2024 handed down in case no. 28369/3/2024, the Bucharest Tribunal ***rejected the proposal for pre-trial detention*** made by DIICOT in criminal investigation case no. 2557/D/P/2023 as unfounded.

By the same ruling, the Bucharest Tribunal ordered ***the imposition of house arrest on the defendant Tate Emory Andrew*** for a period of 30 days, from 22 August 2024 to 20 September 2024 inclusive, imposing the following obligations on him:

- To appear before the investigating authority, the judge for rights and freedoms, the preliminary chamber judge or the court whenever summoned;

- Not to communicate with the co-defendants, the alleged injured parties/victims, or the witnesses in the case, either directly or indirectly, by any means.

Furthermore, the same Order provided for ***the imposition of judicial supervision on the defendant Tate Tristan,*** for a period of 60 days, namely from 22 August 2024 until 20 October 2024, and imposed the following obligations:

- To report to the criminal investigation authority, the preliminary chamber judge or the court whenever summoned;

- To inform immediately the judicial authority which ordered the measure or before which the case is pending of any change of residence;

- To report to the police station within whose jurisdiction he actually resides, in accordance with the supervision schedule drawn up by the police authority or whenever summoned;

- Not to leave the territory of Romania, except with the prior authorisation of the judicial authority before which the case is pending;

- Not to approach the other co-defendants, the alleged injured parties/victims or the witnesses in the case to within a distance of less than 50 metres, and not to communicate with them directly or indirectly, by any means.

Both DIICOT and Messrs Tate Emory Andrew and Tate Tristan lodged an appeal against this Order, on which the Bucharest Court of Appeal ruled, by means of Order No. 370/DL dated 5 September 2024, rejecting the appeal lodged by DIICOT as unfounded and upholding the appeal lodged by Tate Emory Andrew and Tate Tristan, thereby ordering:

- The lifting of the obligation on the defendant Tate Emory Andrew not to communicate with one of the alleged victims;

- The lifting of the obligation on the defendant Tate Tristan not to come within a distance of less than 50 metres of the alleged victims. - Annex 2

3. The house arrest order imposed on the defendant Tate Emory Andrew was successively extended for periods of 30 days each; on 14 February 2025, by Order No. 67/DL, handed down in case file 3844/3/2025, the Bucharest Court of Appeal is to order ***the replacement of the house arrest measure with judicial supervision for a period of 60 days, from 14 February 2025 to 14 April 2025***.

As part of the judicial supervision order, the Bucharest Court of Appeal has imposed the following obligations on the defendant, Tate Emory Andrew:

- To report to the criminal investigation authorities, the preliminary chamber judge or the court whenever summoned;

- To inform the criminal investigation authorities, the preliminary chamber judge or the court immediately of any change of residence;

- To report to the police authorities designated to supervise him, in accordance with the supervision schedule drawn up or whenever summoned;

- Not to leave the territory of Romania, except with the prior authorisation of the judicial authority before which the case is pending;

- Not to communicate, directly or indirectly, by any means, with the other co-defendants, the alleged injured parties/victims, or the witnesses in the case, and not to approach them at a distance of less than 50 metres;

- To provide regular updates on his means of support;

- Not to possess, use or carry weapons. – Annex 3

4. On 24 February 2025, in case no. 2557/D/P/2023, an Order was issued lifting ***the prohibition on the defendant Tate Emory Andrew from approaching and contacting some of the witnesses in the case.*** – Annex 4

5. On 25 February 2025, in case no. 2557/D/P/2023, an Order was issued ordering ***the lifting of the prohibition on the defendant Tate Emory Andrew from leaving the territory of Romania***. – Annex 5

6. Subsequently, with regard to the defendant Tate Emory Andrew, the judicial supervision was successively extended for periods of 60 days each, with Orders to this effect being issued on 1 April 2025, 22 May 2025, 25 July 2025, 30 September 2025, 27 November 2025, 23 January 2026, 27 March 2026, 28 May 2026 and 3 July 2026. – Annex 6

I would point out that, at present, the defendant Tate Emory Andrew is subject to the preventive measure of judicial supervision; this measure was most recently extended, by the Order dated 3 July 2026, for a period of 60 days, from 28 July 2026 until 25 September 2026.

***As can be seen, Mr Tate Emory Andrew is currently subject to a pre-trial measure within Romania and is effectively unable to fulfil his primary obligation to appear, in turn, before the supervising officer or whenever summoned to appear before a judicial authority, namely the court or the prosecutor.***

***During the period in which the preventive measures in this case were being enforced, Mr Tate Emory Andrew was under the strict supervision of an officer from the Voluntari Town Police, Ilfov County, who confirmed that the defendant had fully complied with the obligations imposed.***

7. With regard to the situation of the defendant Tate Tristan, following the imposition of the measure of judicial supervision on him by the Order dated 22 August 2024 handed down by the Bucharest Tribunal in case no. 28369/3/2024, a ruling which became final by Order No. 370/DL handed down by the Bucharest Court of Appeal on 5 September 2024 (Annex 2), it was ordered, on successive occasions, that the preventive measure of judicial supervision be extended for periods of 60 days each, with the Orders dated 17 October 2024, 17 December 2024 and 10 February 2025 being issued in case No. 2557/D/P/2023.

The obligations imposed on the defendant Tate Tristan under the judicial supervision measure are described in point 2 of this statement.

Against the Order dated 10 February 2025, the defendant Tate Tristan lodged an appeal, which was ***upheld*** by the ruling handed down on 12 February 2025 in case no. 4527/3/2025 by the Bucharest Tribunal, ordering ***the revocation of the preventive measure of judicial supervision imposed on him.*** – Annex 7

I would like to note that on 1 July 2026, by means of the Order to join proceedings issued in criminal case No. 1305/D/P/2022, the two criminal cases, namely 1305/D/P/2022 and 2557/D/P/2023, were consolidated, with the investigations to be conducted solely in case 2557/D/P/2023 in respect of all charges brought against Messrs Tate Emory Andrew and Tate Tristan. – Annex 8

8. From 12 February 2025, the defendant Tate Tristan was no longer subject to any preventive measure in case no. 2557/D/P/2023; on 3 July 2026, by means of the Order issued in case no. 2557/D/P/2023, the measure of judicial supervision will be reimposed on the defendant Tate Tristan for a period of 60 days, from 3 July 2026 until 31 August 2026.

Under the terms of the newly ordered judicial supervision measure, the defendant Tate Tristan must comply with the following obligations:

- To report to the criminal investigation authority, the preliminary chamber judge or the court whenever summoned;

- To inform immediately the judicial authority that ordered the measure or before which the case is pending of any change of residence;

- To report to the police station within whose jurisdiction he actually resides, in accordance with the supervision schedule drawn up by the police authority or whenever summoned;

- Not to communicate, either directly or indirectly, with the defendants, the alleged victims/injured parties and the witnesses in this case. - Annex 9

Thus, Mr Tate Tristan is currently subject to judicial supervision within Romania and is effectively unable to comply with the obligations imposed by the competent authorities, namely to appear before the supervising authority, other judicial bodies, the prosecutor or the court, whenever summoned.

I reiterate that the defendants, Tate Emory Andrew and Tate Tristan, have complied in full and on time with all the obligations imposed on them under the preventive measures to which they were subject in case no. 2557/D/P/2023, from 21 August 2024 until the date of execution of the international arrest warrant, as evidenced by the assessment issued by the supervisory authority on 20 July 2026. – Annex 10

Drafted today, the signature certification date, at the notary office “Popovici & Agachi” based in Bucharest Municipality, No. 94 Soldat Ghita Serban Street, 1st floor, Sector 3, in 3 (three) copies, out of which 1(one) copy is kept in the notary office archive and 2 (two) copies were issued to the party.

Declarant

***LAWYER VIDINEAC EUGEN CONSTANTIN***

*Illegible signature*

ROMANIA
National Association of Notaries Public
Professional Partnership of Notaries Public “Popovici & Agachi”
Operating Licence No. 280/14.08.2024
Head office: Bucharest, No. 94 Soldat Ghita Serban Street, 1st floor, Sector 3
Phone: 0747.046.863

**SIGNATURE CERTIFICATION NO. 10**

Year 2026, month August, day 06

I, **POPOVICI ALEXANDRA**, notary public within the notary office “Popovici & Agachi”, based in Bucharest Municipality, No. 94 Soldat Ghita Serban Street, 1st floor, Sector 3, at the request of the party interested in authenticating this document, I went to the address from Bucharest Municipality, No. 24 Regina Maria Boulevard, Sector 4, where I found and identified

- **Mr. VIDINEAC EUGEN-CONSTANTIN**, a Romanian citizen, residing in Jud. Braşov, Mun. Braşov, Str. Colinei, Nr. 6, Sc. B, Ap. 6, identified with Identity Card no. BV1031915 issued by SPCLEP (Local Register of Personal Records) Braşov on 20.11.2025, Personal Identification Number 1820330046197, legal representative of the law firm “Vidineac si asociatii”, with its principal office in Brașov, 2 Petru Maior Street, Brașov County, and a branch office in Bucharest, 23 Regina Maria Boulevard, Block A, 1st floor, Flat 3, Sector 4, Tax Identification Number 49492011,

and signed the 3 (three) copies of the document, the contents of which are known, drawn up by notary office.

Pursuant to art. 12(e) and art. 148 of the Law on Notaries Public and Notarial Activity No. 36/1995, republished, as subsequently amended and supplemented, the signature on this document is hereby authenticated.

A fee of 500 lei + 105.00 lei VAT was charged, under tax receipt No. 22973/2026.

**NOTARY PUBLIC,**

**POPOVICI ALEXANNDRA**

(signature, stamp)

BLANK PAGE

I, the undersigned **BADII ELENA-IRINA**, a sworn interpreter and translator for the **ENGLISH** and **SPANISH** languages, according to authorisation no. 17039 of 19.12.2008, issued by the Romanian Ministry of Justice, do hereby certify that this is a true and accurate translation from **ROMANIAN** into **ENGLISH** of the text that was presented to me, that such text was translated in full, without omissions, and that its content and meaning were not altered in the translation.

