Jason P. Koch (State Bar No. 325156)
THE LAW OFFICE OF JASON P. KOCH
3 West Carrillo Street, Suite 216
Santa Barbara, California 93101
Telephone: (805) 695-4527
jason@jasonkochlaw.com

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISCTRICT OF FLORIDA**

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF TRISTAN TATE;<br><br>IN THE MATTER OF THE EXTRADITION OF ANDREW TATE. | CASE NO.: 26-MJ-03259-LFL<br>26-MJ-03260-LFL<br><br>**DECLARATION OF JASON P. KOCH** |

I, Jason P. Koch, declare the following:

1. I am an attorney duly licensed to practice law before all courts of the State of California. I am counsel of record for Defendant and Cross-Complainant Emory Andrew Tate III ("Tate") in *Brianna Stern v. Emory Andrew Tate, III*, Los Angeles Superior Court Case No. 25SMCV01570. I submit this declaration regarding the procedural history and present posture of the action.

2. Except where otherwise stated, I have personal knowledge of the matters set forth in this declaration through my representation of Tate, my participation in the proceedings, and my review of the pleadings, orders, filings, and register of actions maintained in this case. If called as a witness, I could and would testify competently to these matters.

3. Plaintiff Brianna Stern ("Stern") commenced the action by filing her Complaint on March 27, 2025.

4. On August 12, 2025, Tate filed a Verified Cross-Complaint against Stern. The Cross-Complaint asserted causes of action for: (1) defamation—libel; (2) defamation—slander; (3) intentional infliction of emotional distress; (4) invasion of privacy—false light; (5) abuse of process; and (6) misappropriation of likeness under Civil Code section 3344.

5. Stern thereafter filed a special motion to strike the Cross-Complaint under Code of Civil Procedure section 425.16.

6. On December 11, 2025, the Court issued its final ruling on Stern's special motion to strike. The Court:

a. Granted the motion as to the fifth cause of action for abuse of process in its entirety;

b. Granted the motion in part as to the first cause of action for libel per se, the second cause of action for slander per se, the third cause of action for intentional infliction of emotional distress, and the fourth cause of action for false light, to the extent those claims were predicated on Stern's filing of her Complaint, her request for a domestic violence restraining order, and statements made in those judicial proceedings; and

c. Denied the motion as to the remaining portions of the first through fourth causes of action, including the claims based on Stern's statements to the media and on her social-media accounts, and denied the motion as to the sixth cause of action for misappropriation of likeness.

7. A true and correct copy of the Court's December 11, 2025 order is attached hereto as **Exhibit A**.

8. Following the Court's ruling, Stern did not file an answer or other responsive pleading addressing the portions of Tate's Cross-Complaint that remained operative.

9. On April 21, 2026, the Clerk of the Court entered Stern's default on Tate's Cross-Complaint.

10. A true and correct copy of the entered Request for Entry of Default is attached hereto as **Exhibit B**.

11. As of August 18, 2026, Stern has not filed an answer or other responsive pleading to the surviving portions of the Cross-Complaint.

12. As of August 18, 2026, the register of actions does not reflect that Stern has filed a motion to vacate or set aside her default, sought relief from default under California Code of Civil Procedure section 473 or any other provision, or otherwise challenged the entry of default.

13. No default judgment has yet been entered against Stern. Tate is presently assembling the declarations, authenticated exhibits, damages evidence, and other materials necessary to seek a court judgment on the surviving causes of action.

14. Stern's Complaint against Tate remains pending. Tate continues to defend against the claims asserted in that Complaint.

15. Trial is presently scheduled for June 14, 2027.

16. Attached hereto as **Exhibit C** is a true and correct copy of the current register of actions downloaded from the Court's electronic docket on August 18, 2026.

17. I submit this declaration solely to establish the procedural history and current posture of this action.

I declare under penalty of perjury under the laws of the United States and State of Florida that the foregoing is true and correct.

Executed on August 19, 2026, at Santa Barbara, California.

Jason P. Koch

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Santa Barbara, State of California. I am over the age of eighteen years and not a party to the within action. My business address is 3 W. Carrillo Street, Suite 216, Santa Barbara, California, 93101. On August 19, 2026, I served the following document(s) described as **NOTICE OF APPLICATION AND APPLICATION FOR ORDER ADMITTING JOSEPH D. MCBRIDE AS COUNSEL *PRO HAC VICE* FOR SPECIALLY APPEARING DEFENDANT EMORY ANDREW TATE III; MEMORANDUM IN SUPPORT; VERIFIED APPLICATION OF JOSEPH D. MCBRIDE; DECLARATION OF JASON P. KOCH** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

☒ **BY U.S. POSTAL SERVICE:** This document was served by United States mail. I enclosed the document in a sealed envelope or package addressed to the person(s) at the address(es) above and placed the envelope(s) for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice of collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service at Santa Barbara, California, in a sealed envelope with postage fully paid.

☐ **BY FACSIMILE:** The document(s) were served by facsimile. The facsimile transmission was without error and completed prior to 5:00 p.m. A copy of the transmission report is available upon request.

☐ **BY OVERNIGHT DELIVERY:** I enclosed the above-described document in (an) envelope(s) of a type designated by the express service carrier for overnight delivery on the next business day with delivery fees fully pre-paid or provided for and addressed as set forth on the attached Service List. I ☐ placed the above-described envelope into a box or other facility regularly maintained by the express service carrier/☐ delivered the above-described envelope to an authorized courier or driver authorized by the express service carrier to receive the documents.

☐ **BY HAND DELIVERY:** The document(s) were left at the address indicated on the Service List, below.

☐ **BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 19, 2026, at Santa Barbara, California.

______________________________
Jason P. Koch

**SERVICE LIST**

David Fortney
THE BUZBEE LAW FIRM
J.P. Morgan Chase Tower
600 Travis, Suite 7500
Houston, Texas 77002
dfortney@txattorneys.com

Attorney for Plaintiff, Brianna Stern

# EXHIBIT A

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES - WEST DISTRICT

| | |
| --- | --- |
| BRIANNA STERN,<br><br>Plaintiff(s),<br><br>vs.<br><br>EMORY ANDREW TATE III,<br><br>Defendant(s).<br><br>AND RELATED CROSS-ACTION(S). | CASE NO(S).: 25SMCV01570<br><br>[TENTATIVE] ORDER REGARDING CROSS-DEFENDANT BRIANNA STERN'S SPECIAL MOTION TO STRIKE<br><br>Dept.: I<br>Hearing Date: 12/11/2025<br>Hearing Time: 9:00am |

## I. Background

Plaintiff Brianna Stern ("Stern") filed this sexual assault and battery action against defendant Emory Andrew Tate III ("Tate"). Tate filed a cross-complaint for defamation and misappropriation of likeness (among other things) against Stern in response.[1] Stern is a model and influencer who signed a branding agreement with a cryptocurrency called $SISTER in June

[1] The facts set forth in the next few paragraphs are taken from Stern's recitation primarily because in a defamation claim (as is at issue here) one must look at the allegedly defamatory statements. The court notes, as discussed below, that Tate disputes many of these facts and maintains that he did nothing wrong. Nothing herein should be viewed as a determination by the court that Stern's recitation of the facts is accurate or true; that determination—one way or the other—will be for a later day. It is only to set forth essentially what the nature is of the defamatory conduct.

2024. (Stern Decl., ¶¶3-4.) Stern's followers lost money and so she wanted to rehabilitate the coin to help her followers recover their funds. (*Id*. at ¶4.) To that end, Stern thought Tate, his brother Tristan, or another cryptocurrency advocate, Ansem, could help her.[2] (*Ibid*.) In June 2024, Stern was invited to participate in a content shoot for Tate's own cryptocurrency brand, $DADDY, and Stern eventually agreed to participate in exchange for an education on cryptocurrency from the brothers. (*Id*. at ¶5, Exh. A [text messages with Tristan].) Tristan flew Stern out to Romania, which is where she met Tate for the first time. (*Id*. at ¶¶3, 6.) Tate encouraged her posts about $DADDY, which contained his likeness and references to him, and did not object. (*Id*. at ¶6.)

Stern initially found Tate charming and affectionate, and the two became sexually intimate during that June 2024 trip. (Stern Decl., ¶7.) They remained intimate until March 2025. (*Ibid*.) Stern states that most of the relationship was consensual, but as it progressed Tate became increasingly threatening, violent, and hostile. (*Id*. at ¶8.) Stern claims that Tate was verbally abusive during sex, including claiming that Stern was his "property" and that she had not been "hit hard enough." (*Ibid*.) He would tell Stern, in part, that "If you try to leave me, I will ruin your life," or "If you fuck up again, I will abandon you," and "If you ever fuck with me, I will fucking kill you. I mean it. I will kill you." (*Id*. at ¶9.) Stern asserts that she became increasingly afraid of Tate over time. (*Ibid*.) In addition to the claimed verbal abuse, there was allegedly physical abuse as well. (*Id*. at ¶10.) Tate is alleged to have hit Stern during sex, even though she says she never consented to such actions. (*Ibid*.) In fact, she says that she told him the opposite, that physical violence was a "no" and scared her. (*Ibid*., Exh. C [text messages indicating fear of physical violence].)

Tate flew to Los Angeles to see Stern in March 2025. (Stern Decl., ¶11.) On March 10, Stern spent the evening with him in his hotel room at the Beverly Hills Hotel. (*Ibid*.) The two began a consensual sexual encounter, but it soon allegedly became nonconsensual when Tate began choking Stern "extraordinarily hard while using verbally abusive language towards me."

[2] The court refers to third party Tristan Tate by his first name due to the shared family name with his brother and cross-complainant/defendant, Andrew Tate.

(*Ibid*.) Stern began to cry and asked him to stop, but he did not. (*Ibid*.) Tate began hitting Stern repeatedly on the head and face, using one hand to hold her neck and the other to strike her. (*Ibid*.) "Although I initially consented to having intercourse with Tate that night, I did not consent to being choked, hit and verbally abused, and as stated I asked and begged Tate to stop." (*Ibid*.)

Stern claims that she left the next morning as soon as she felt safe doing so and later visited a doctor. (Stern Decl., ¶¶11-12.) She states that she was diagnosed with post-concussive syndrome. (*Id.* at ¶12, Exh. D.) Stern provides photos of her injuries from the night of and night after the incident (*id.* at Exh. E), although Tate disputes their authenticity in the sense that he claims that the photos are staged to show injuries that are not real.

Tate soon left the United States and once he left, Stern filed a police report and this action. (Stern Decl., ¶¶15-16.) When she heard Tate was returning to the country, Stern sought and received a DVTRO from Los Angeles Superior Court. (*Id*. at ¶16.) The parties would eventually agree to the entry of a longer-term restraining order on or around September 4, 2025. (*Ibid*.)

Tate disputes this entire course of events in opposition. He asserts, without equivocation, that Stern's allegations of abuse and lack of consent are all false. (McBride Decl., Exh 2, pp. 158-160, ¶¶1, 16.)[3] He accuses Stern of pursuing a relationship with him for financial gain and he says that this is how she operates. (*Id*. at ¶¶2-7.) As for the March 10 altercation, Tate contends that they had a verbal disagreement as to her past history toward other men, whether she had contacted law enforcement against others as a tactic of intimidation or extortion, and whether her demands for money were part of a similar pattern. (*Id*. at ¶8.) Tate states Stern did not deny or explain her actions, and left the hotel, only to file this action days later. (*Ibid*.)

Tate goes on to insist that all of their interactions were consensual, and that Stern has a "public fetish for BDSM." (McBride Decl., Exh 2, pp. 159, ¶10.) He emphasizes his assertion that she never expressed discomfort or said no. (*Ibid*.) Tate further takes issue with Stern's occupation(s), injuries, and media blitz. (*Id*. at ¶¶10-15.)

[3] Of course, McBride cannot provide evidence of the events in question. But the pages cited in text are citations to Tate's declaration, and Tate, of course, does have foundation to testify.

Currently before the court is Stern's special motion to strike ("SMS") the cross-complaint. Tate opposes.

**II. Evidentiary Matters**

Stern requests judicial notice of various news articles with her moving papers. The court GRANTS judicial notice as to the existence of these articles and what they say and to the extent they reflect a public interest in Tate's ongoing legal troubles regarding his treatment of women. The court does not accept the allegations in the articles as true.

The same applies to Tate's request for judicial notice in opposition, requesting notice of Stern's interviews. The court GRANTS judicial notice of the fact that she gave the interviews and made statements about Tate. The court goes no further. (And obviously Tate does not want the court to accept the interviews for the truth of what Stern said.) Tate further requests judicial notice of his cross-complaint and a letter from the Los Angeles County District Attorney's Office dated June 27, 2025, wherein it declined to file charges against Tate for the March 10 incident. The court GRANTS the request as it applies to the cross-complaint and the *existence* of the letter and the agency's decision. The court will also accept the truth of the assertion that there was a declination, which is essentially the jural effect of the letter. This does not mean the court takes Tate's allegations and the letter to mean more, for example that Stern's allegations are false and Tate's are true. That is the interpretation urged by Tate, and it is improper for purposes of judicial notice. The court also DENIES judicial notice of the McBride declaration to the extent of the truth of any matters of fact to which he asserts without personal knowledge.

Stern filed evidentiary objections to the McBride declaration in reply. The court agrees that much of the McBride declaration is inadmissible. There are various "screenshots" of Stern's social media pages, but there is no real proper authentication for those screenshots by the person that took them. The court notes that for these purposes, the evidentiary standard is a bit relaxed. Tate's showing may be satisfied if "it is reasonably possible the evidence . . . will be admissible at trial." (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 947.) This rule is most easily applied where the defect is one of authentication or obviously curable foundation. Here, the purported defect is (for example) that McBride fails to lay an

adequate foundation for the screenshots. All of this would be admissible if the person who took the screenshots were to explain how they found Stern's social media accounts, attributed them to her, obtained the screenshots, and explained that the screenshots were true and correct representations of Stern's social media posts.[4] Thus, it is "reasonably possible" that Tate will be able to lay a foundation at trial. As an aside, though *Sweetwater* concerns a special motion to strike, it cites *Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 541-542 with approval. The *Perry* Court reasoned that the evidence considered on a motion for summary judgment must be admissible *at trial*. (*Ibid.*) This will not be the court's only discussion of *Sweetwater*, however, as discussed below.

While the court is willing to accept the screenshots of Stern's posts, it goes no further. The screenshots do not stand alone. Instead, they have McBride's (or some other person's) commentary at the top. The same is done for a few videos. As an example, Exhibit 2 of the McBride declaration contains Exhibit F3-1. That exhibit purports to summarize the screenshot of a video. The video is not lodged with the court. Tate's evidence therefore consists not only of the screenshots, but his (or McBride's) narrative explanation of what he believes the screenshots show. Those narrative comments run into the secondary evidence rule. (See Evid. Code, §§ 1521, 1523; see generally, *People v. Panah* (2005) 35 Cal.4th 395, 475 [citing the former statutory scheme regarding the best evidence rule and holding that a videotape constitutes a writing].) The screenshots themselves are admissible, given that Tate likely will be able to authenticate them, but his comments are inadmissible. Further, it is far from clear that there is any foundation as to many of those comments. The court therefore DISREGARDS those comments. That means that many of the screenshots lose their purported "contextual" analysis and, to a large degree, their probative value.

Next, there is no certified transcript of certain videos, just McBride's own quote of the material. That is not admissible. The court does not have the time to click the link, watch the video, and verify that the quote is correct. This is Tate's job, not the court's. (See generally,

---

[4] In particular, it is not as though Stern argues that the posts are false or manipulated, which might change the court's ruling. Then it is not simply a matter of authentication.

*Jerry's Shell v. Equilon Enters., LLC* (2005) 134 Cal.App.4th 1058, 1069.) The court DISREGARDS these summaries. All of that said, the court does not think that any of these objections actually have any effect on the motion's outcome. Frankly, very little of Tate's evidentiary compendium is critically relevant other than his declaration.

The court SUSTAINS Stern's objection to Exhibit 4 of the McBride declaration. McBride (or the unidentified author) offers a medical opinion on Stern's bruising. "Artificial Intelligence concludes that the bruise marks are consistent with cosmetic injections, not choking or slapping." (McBride Decl., Exh. 4, p. 198.) The preliminary issue is authentication. Page 198 in Exhibit 4 is a screenshot of the initial ask to an AI tool, and the beginning of the AI tool's analysis. Page 199 seems to continue the AI tool's analysis but it is no longer in screenshot form. Instead, it is a typed document setting forth a medical analysis on Stern's presentation. The (unauthenticated) screenshot of the entire analysis is not provided to the court, and no one explains that page 199 is the continued analysis. This is not like a screenshot of social media, which can be easily authenticated. The court simply has no idea who authored page 199 and whether it is an accurate representation of what the AI tool said. To compound the issue, the "opinion" in this filing is the province of an expert and the author does not explain their qualifications. The court is not sure when AI became an expert that can attest to Stern's presentation and bruising.[5] Tate's selective reliance on this exhibit is made clear, given the fact that he ignores the last sentence: "However, this is not a conclusive diagnosis, and a professional medical evaluation would be necessary for certainty." (*Id*. at p. 199, internal footnote omitted.) And the fact that McBride/Tate is offering this evidence as if it establishes the falsity of Stern's injuries is not credible.

That leaves Tate's declaration embedded in the opposition. The objections to this filing are OVERRULED. True, in a sense, the declaration is, as presented, hearsay. It was not written for this proceeding and it is presented by McBride for the truth of the matter asserted therein. Without this declaration, the opposition fails. It is therefore very important to the opposing party that the declaration be admitted. As the court previously adverted, its discussion of *Sweetwater*

---

[5] Based on the footnote on page 199, the purported analysis is from Grok, which is the platform X's AI tool. X is not a medical website.

takes on a different dimension here. In *Sweetwater*, our Supreme Court concluded, "In sum, at the second stage of an anti-SLAPP hearing, the court may consider affidavits, declarations, and their equivalents if it is reasonably possible the proffered evidence set out in those statements will be admissible at trial. Conversely, if the evidence relied upon *cannot* be admitted at trial, because it is categorically barred or undisputed factual circumstances show inadmissibility, the court may not consider it in the face of an objection. If an evidentiary objection is made, the plaintiff may attempt to cure the asserted defect or demonstrate the defect is curable." (*Sweetwater, supra,* 6 Cal.5th at p. 949, emphasis in original.) This would extend to hearsay objections as well, which the *Sweetwater* Court explicitly addressed. (*Id*. at pp. 946-947 [applying relaxed SMS standard to hearsay evidence].) This standard, the Court stated, both comported with legislative intent and also protected plaintiffs who could not take discovery. "To strike a complaint for failure to meet evidentiary obstacles that may be overcome at trial would not serve the SLAPP Act's protective purposes. Ultimately, the SLAPP Act was 'intended to end meritless SLAPP suits early without great cost to the target' (*Newport Harbor Ventures, supra,* 4 Cal.5th at p. 644), *not* to abort potentially meritorious claims due to a lack of discovery. Notwithstanding the discovery stay, the court has discretion to order, upon good cause, specified discovery if required to overcome the hurdle of potential inadmissibility. (§ 425.16, subd. (g).)" (*Id*. at p. 949, emphasis in original, parallel citations omitted.)

This exception as applied to hearsay only goes so far. *Sanchez v. Bezos* (2022) 80 Cal.App.5th 750 is instructive. In *Sanchez*, plaintiff Sanchez provided a declaration recounting out-of-court statements provided by reporters to prove that defendant Bezos made defamatory comments (i.e., the element of publication). (*Id.* at p. 760.) The trial court excluded the evidence as hearsay and rejected plaintiff's reading of *Sweetwater*. (*Id*. at p. 761.) Plaintiff had argued that *Sweetwater* permitted the introduction of hearsay evidence, as long as it was reasonably possible the witness would appear and testify at trial. (*Id*. at pp. 760-761.) The trial court rejected this interpretation of *Sweetwater* twice, and the matter was appealed. (*Id*. at p. 762.) On appeal, the *Sanchez* court agreed with the trial court.

The *Sanchez* court summarized *Sweetwater*'s holdings. "*Sweetwater* has two main holdings. First, the Supreme Court extended the statutory hearsay exception for affidavits and declarations in anti-SLAPP proceedings to other evidence submitted under oath or penalty of perjury, such as plea forms and grand jury testimony. (*Sweetwater, supra*, 6 Cal.5th at p. 945.) Second, while acknowledging the rule that courts may consider affidavits and their equivalents for anti-SLAPP purposes only to the extent they contain evidence admissible at trial, the Supreme Court clarified that parties need not establish all preconditions to admissibility at the anti-SLAPP stage. Rather, 'evidence may be considered at the anti-SLAPP motion stage if it is *reasonably possible* the evidence set out in supporting affidavits, declarations or their equivalent will be admissible at trial.' (*Id.* at p. 947, italics added.)" (*Id.* at p. 774, italics by *Sanchez* court.)

The *Sanchez* court then discussed the infirmities in the plaintiff's evidentiary showing and how *Sweetwater* could not cure the defects. There, the plaintiff offered evidence that he had heard from reporters that they had heard others state that defendant had made certain comments about plaintiff. That evidence was rejected as hearsay. But critically, that was because there were two layers of hearsay in plaintiff's proffer. As the court concluded, "In the instant case, had the reporters submitted their own declarations attesting under penalty of perjury to the defamatory comments defendants purportedly made to them, or testified to those facts under oath in another proceeding, that evidence would be comparable to the plea forms and grand jury transcripts in *Sweetwater*. In those circumstances, the reporters' statements, as reflected in their declarations or testimony, would be 'made by competent witnesses with personal knowledge of the facts they swear to be true.' (*Sweetwater, supra*, 6 Cal.5th at pp. 944–945.) Those statements, moreover, likely would be admissible if the reporters repeated them at trial. The reporters' statements recounted in plaintiff's declaration, however, are insufficient to show 'that admissible evidence exists to prove plaintiff's claims' (*id.* at pp. 944–945), because they were not made under oath or penalty of perjury, and the hearsay rule bars plaintiff from testifying as to what the reporters told him to prove publication of purported defamation by defendants." (*Id.* at p. 775–776.)

Tate does not have that issue here. Unlike *Sanchez*, the hearsay offered here is an out-of-court declaration made under penalty of perjury. Thus, the court has considered the declaration.

**III. Legal Standards**

The California Legislature has authorized a special motion to strike in lawsuits that seek to "chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (Code Civ. Proc., § 425.16, subd. (a).) Code of Civil Procedure section 425.16, subdivision (b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." This is a powerful weapon designed to provide a potent tool for a defendant (or cross defendant) who can show that the lawsuit is really being used to stifle the exercise of certain constitutional rights. First, the motion is brought at the pleading stage—it has the potential of having a lawsuit dismissed at the outset. Second, absent a showing of good cause, the filing of the motion freezes discovery. Unlike almost any other motion of which the court is aware, a plaintiff will be required to produce evidence to support the claim without the benefit of any formal discovery. Consider that compared to a summary judgment motion. A summary judgment motion must be continued if the opposing party can establish that discovery is likely to yield evidence to defeat the motion to allow that evidence to be obtained; not so here. Third, in an SMS, the plaintiff must come forward with evidence to defeat the motion. In the summary judgment context (unlike federal law), the opposing party need only present evidence after the moving party has made a *prima facie* showing that the opposing party cannot prevail. Fourth, an SMS need not dispose of the entire case or even an entire cause of action; specific allegations can be stricken. In a motion for summary judgment or summary adjudication, generally the motion must resolve the entire case or at least an entire cause of action. Fifth, a successful movant in an SMS is entitled to fees as a matter of right, while a successful opponent can recover fees only if the motion was frivolous and filed for an improper purpose. Sixth, if an SMS is denied, the order denying it is immediately appealable. All of that is strong medicine. But even though it is strong, it serves an important public purpose, and as such it is not to be applied with disfavor.

The SMS structure gives rise to a two-step process for determining whether the SMS should be granted. First, the court decides whether the defendant has made a threshold showing that the challenged claims or causes of action arise from a protected activity. (See Code Civ. Proc., § 425.16, subd. (b)(1).) "A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in [section 425.16,] subdivision (e)." (*Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1043.) The California Supreme Court has summarized the analysis as follows: "At that stage, we said, the moving defendant must identify the acts alleged in the complaint that it asserts are protected and what claims for relief are predicated on them. In turn, a court should examine whether those acts are protected and supply the basis for any claims. It does not matter that other unprotected acts may also have been alleged within what has been labeled a single cause of action; these are 'disregarded at this stage.' (*Baral*, *supra*, 1 Cal.5th at p. 396.) So long as a 'court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached' with respect to these claims. (*Ibid.*)" (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1010, parallel citations omitted.)

If the defendant makes that threshold showing, the burden shifts to the plaintiff to establish a likelihood of prevailing on the complaint, which has sometimes been referred to as "minimal merit." (See Code Civ. Proc., § 425.16, subd. (b)(1).) The burden on the plaintiff is like the burden imposed to defeat a summary judgment motion: the plaintiff must submit admissible evidence showing that it can prevail. (*Billauer v. Escobar-Eck* (2023) 88 Cal.App.5th 953, 962.) The court does not weigh the evidence or determine issues of credibility, nor does the court resolve any factual disputes. (*Ibid.*) Rather, as in a summary judgment motion, if the plaintiff can put forward evidence that, if true, would establish its claim in light of all reasonable favorable inferences, then the SMS will be denied. (*Ibid.*) This would not be intuitively obvious from the SMS statute, which speaks of a "probability" that plaintiff will prevail and does not expressly refer to the summary judgment standard. But the statute has been so interpreted because it is plain that although the Legislature intended the motion to protect important constitutional rights, the Legislature did not intend the motion to be so powerful as to deny the opposing party due process.

## IV. The Court's Analysis and Ruling

### A. Acts in Furtherance of the Right of Petition or Free Speech

To invoke Code of Civil Procedure section 425.16, a defendant need only demonstrate that a suit arises from the defendant's exercise of free speech or petition rights. (See Code Civ. Proc., § 425.16, subd. (b); *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) "At this first step, courts are to 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' (*Park*, *supra*, 2 Cal.5th at p. 1063.) The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity. (*Wilson*, *supra*, 7 Cal.5th at p. 884.)" (*Bonni, supra,* 11 Cal.5th at p. 1009, parallel citations omitted.) "In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (Code Civ. Proc., § 425.16, subd. (b)(2).)

There are two separate categories of purportedly protected activity. The first consists of Stern's allegedly defamatory statements in her complaint and request for a Domestic Violence Restraining Order ("DVRO"). (Cross-Compl., ¶1.) The second set of activity consists of Stern's statements on media outlets, social media platforms, and more reiterating the allegations from her pleadings. (*Ibid*.) There are also aspects of the cross complaint that are not predicated on any of these allegations. For example, the sixth cause of action focuses on Stern's allegedly wrongful use of Tate's likeness. "Cross-Defendant knowingly and intentionally used Cross-Complainant's name, likeness, and persona including his well-known pseudonym '$Daddy' or 'SDaddy' without his consent in a series of social media posts, promotional polls, sexually suggestive content, and cryptocurrency marketing materials. These references were repeatedly tied to the promotion of Cross-Defendant's coin project 'Sister Coin' and her subscription-based adult content (OnlyFans)." (Cross-Compl., ¶75.) Stern does not address these statements in her first prong analysis, and they do not fit within the previously identified categories of protected activity. The allegations are not facially protected either. Yet the motion still refers to and argues the sixth cause of action on the second prong. Having failed to make the required analysis on the first

prong, there is no need to reach the second prong analysis. The motion is DENIED as to the sixth cause of action.

**1. Filing of Complaint and DVRO**

Stern argues that some of the causes of action seek to hold her liable for the filing of and statements she made in the complaint and her DVRO. She is right. The first cause of action for defamation (libel), third clause of action for intentional infliction of emotional distress ("IIED"), fourth cause of action for invasion of privacy (false light), and fifth cause of action for abuse of process are partly or wholly predicated on Stern's filing of the complaint or DVRO and the defamatory nature of the statements contained therein. (Cross-Compl., ¶¶39, 55, 62, 69.)

The acts allegedly committed by Stern constitute protected activity under section 425.16, subdivision (e)(1), as "any written or oral statement or writing made before a [] judicial proceeding, or any other official proceeding authorized by law," and(e)(2) "any written or oral statement or writing made in connection with an issue under consideration or review by a [] judicial body." (Code Civ. Proc., § 425.16, subd. (e)(1)-(2).) This includes the filing of minute orders and other court orders. " '[A]ny act' (§ 425.16, subd. (b)(1)) 'includes communicative conduct such as the filing, funding, and prosecution of a civil action. [Citation.] This includes qualifying acts committed by attorneys in representing clients in litigation. [Citations.]' (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.)" (*Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200, 210.) "The constitutional right of petition encompasses ' " 'the basic act of filing litigation.' " ' (*Briggs, supra,* 19 Cal.4th at p. 1115.) Sletten is being sued because of the affirmative counterclaims he filed in federal court. In fact, but for the federal lawsuit and Sletten's alleged actions taken in connection with that litigation, plaintiffs' present claims would have no basis. This action therefore falls squarely within the ambit of the anti-SLAPP statute's 'arising from' prong. (§ 425.16, subd. (b)(1).)" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 90, parallel citations omitted.)

Importantly, Stern's statements within the complaint and DVRO are entitled to protection even if they are false. Subdivision (e)(2) protects any statement made "in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other

official proceeding authorized by law[.]" (Code Civ. Proc., § 425.16, subd. (e)(2).) "Courts 'have looked to the litigation privilege as an aid in construing the scope of section 425.16, subdivision (e)(1) and (2) with respect to the first step of the two-step anti-SLAPP inquiry—that is, by examining the scope of the litigation privilege to determine whether a given communication falls within the ambit of subdivision (e)(1) and (2).' " (*Kettler v. Gould* (2018) 22 Cal.App.5th 593, 607, citing *Flatley v. Mauro* (2006) 39 Cal.4th 299, 322-323.) "To be privileged under [Civil Code] section 47, a [pre-litigation] statement must be 'reasonably relevant' to pending or *contemplated* litigation. . . The reasonable relevancy requirement of section 47 is analogous to the 'in connection with' standard of section 425.16, subdivision (e)(2)." (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1266, collecting cases, emphasis in original.) "Accordingly, although litigation may not have commenced, if a statement 'concern[s] the subject of the dispute' and is made 'in anticipation of litigation "contemplated in good faith and under serious consideration," ' (*Rohde, supra,* 154 Cal.App.4th at p. 36, quoting *Action Apartment, supra*, 41 Cal.4th at p. 1251) then the statement may be petitioning activity protected by section 425.16." (*Id*. at p. 1268, parallel citations omitted.) "The litigation privilege is absolute; it applies, if at all, regardless whether the communication was made with malice or the intent to harm. (*Wise v. Thrifty Payless, Inc.* (2000) 83 Cal.App.4th 1296, 1302.) Put another way, application of the privilege does not depend on the publisher's 'motives, morals, ethics or intent.' (*Silberg v. Anderson, supra,* 50 Cal.3d at p. 220.)" (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 913, parallel citations omitted.)

Tate's arguments in opposition do not change the outcome. He argues that the statements contained in the cross-complaint are false and therefore are not protected by section 425.16. He relies on *Osborne v. Pleasanton Automotive Co., LP* (2024) 106 Cal.App.5th 361 to support that argument. *Osborne* actually supports Stern's position, though. *Osborne* discusses the *Flatley* exception as set forth in *Flatley v. Mauro* (2006) 39 Cal.4th 299. There, our Supreme Court held that illegal activity is not protected activity where the defendant admits to the illegal act or uncontroverted evidence establishes as much. (*Id.* at p. 317; see also, *Lefebvre v. Lefebvre* (2011) 199 Cal.App.4th 696, 703.) That case, though, carves out a very narrow exception. Where the

speech is *indisputably* unprotected, then it fails to satisfy the first prong. But where there is a debate about it, the prevailing law is that prong one is satisfied. "Unlawful or criminal activities do not qualify as protected speech or petition activities under the anti-SLAPP statute. . . An activity may be deemed unlawful as a matter of law when the defendant does not dispute that the activity was unlawful, or uncontroverted evidence conclusively shows the activity was unlawful." (*Dwight R. v. Christy B.* (2013) 212 Cal.App.4th 697, 711-712, citing *Flatley*, *supra*, 39 Cal.4th at p. 317 and *Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 446.) *Osborne* is no different: it reiterates that the *Flatley* exception only applies where there is no dispute as to whether the activity was unlawful, or where the evidence on illegality is uncontroverted. (*Osborne, supra,* 106 Cal.App.5th at pp. 378-381.) And in that case, the defendant failed to meet Flatley's high bar. "There is no 'uncontested' evidence that supports Slap's claim of extortion, and Slap has failed to show this is 'one of those rare cases in which there is uncontroverted and uncontested evidence that establishes the crime [of extortion] as a matter of law.' (*Cross v. Cooper, supra,* 197 Cal.App.4th at p. 386.) Because Slap's cross-claims are based on protected speech in furtherance of her right to petition and the illegality of that speech is neither uncontested nor conclusively established, Osborne has satisfied her burden on the first prong of the anti-SLAPP analysis." (*Id*. at pp. 381-382.) It is also important to recall that the statements in *Flatley* were not made in a court filing. Rather, they were made in a pre-litigation demand letter. The rules are somewhat different.

The same defect applies to Tate's showing here. His evidence is contested by Stern's evidence with her moving papers, and his evidence does not conclusively establish that she is perjuring herself. Tate also relies heavily on his cross-complaint in making this argument. A pleading, even where verified, is not evidence. (See generally, *Barker v. Fox & Associates* (2015) 240 Cal.App.4th 333, 350 [stating that a pleading is not evidence on the second prong analysis and disagreeing with *Salma v. Capon* (2008) 161 Cal.App.4th 1275 on this basis].) Further, aside from a showing under *Flatley*, the veracity of Stern's statements is not at issue on the first prong. "Likewise, evidence that the alleged 'statements were false does not determine whether they constitute protected activity for purposes of the SLAPP statute.' (*Haight Ashbury Free Clinics,*

*Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1549.)" (*City of Costa Mesa v. D'Alessio Investments, LLC* (2013) 214 Cal.App.4th 358, 372, parallel citations omitted.) Tate makes no other arguments regarding the first prong and the filing of the pleadings. The burden shifts as to these allegations.

**2. Stern's Public Statements**

Stern argues that Tate seeks to hold her liable for statements she made to the public about her allegations here, which are protected under section 425.16, subdivision (e)(3) and (4). The first cause of action for defamation (libel per se), second cause of action for defamation (slander per se), third cause of action for IIED, and fourth cause of action for false light are predicated on statements Stern made to the media about her allegations. (Cross-Compl., ¶¶39, 48, 55, 62.) The purported statements are not really identified with any particularity, except for one, and that is Exhibit Q to the cross-complaint. That exhibit contains statements from Stern on X about her allegations. But the cross-complaint otherwise identifies (in a generic way) statements Stern made "media outlets, social media platforms, including X (formerly Twitter) and Instagram." (*Id.* at ¶2.) Tate identifies interviews Stern did with NBC and other outlets. (Tate RJN, ¶3 [identifying four interviews with Stern about her allegations].) Although the first prong analysis requires a focus on the pleadings, extrinsic evidence can be used, as here, to clarify the actions at issue. (See *Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 111.)

Subdivision (e)(3) protects "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest," while subdivision (e)(4) protects "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (Code Civ. Proc., § 425.16, subd. (e)(3)-(4).) What constitutes a statement made in connection with an issue of public interest is the same under subdivisions (e)(3) and (4). (*Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107, 115-119.) To determine whether a statement comes within these subdivisions, there is a(nother) two-step test. "First, we ask what 'public issue or [ ] issue of public interest' the speech in question implicates—a question we answer by looking to the content of the speech. (§ 425.16, subd.

(e)(4).) Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest." (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 149–150.)

"California's anti-SLAPP jurisprudence has 'struggled' to define what makes something an issue of public, rather than private, interest. (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 621.)" (*Dubac v. Itkoff* (2024) 101 Cal.App.5th 540, 548, parallel citations omitted.) "On some points, however, judges have 'ably' distilled the characteristics of a public issue. (*Geiser, supra,* 13 Cal.5th at p. 1248.) Five factors generally tend to make a statement implicate a public interest: [¶] 1. The statement concerns a person or entity in the public eye; [¶] 2. the statement concerns conduct that could directly affect a large number of people beyond the direct participants; [¶] 3. the statement concerns a topic of widespread public interest; [¶] 4. the issue is of concern to a substantial number of people; or [¶] 5. the issue has been the subject of extensive media coverage. (*Ibid.*)" (*Id.* at pp. 548-549, parallel citations omitted.)

As Stern argues, the statements at issue and referenced in the attached exhibits concern the same public issue, namely her allegations of abuse against Tate. All concern Tate, who is, as he himself pleads, a "well-known entrepreneur and social media influencer with millions of followers worldwide. As a public figure, he has been subjected to scrutiny." (Cross-Compl., ¶3.) It is Tate's celebrity and the public's interest in his ongoing legal troubles and private life that elevates these issues. (See *Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1347 ["The public's fascination with Brando and widespread public interest in his personal life made Brando's decisions concerning the distribution of his assets a public issue or an issue of public interest. Although Hall was a private person and may not have voluntarily sought publicity or to comment publicly on Brando's will, she nevertheless became involved in an issue of public interest by virtue of being named in Brando's will"].) Further, it is in the public interest to prosecute widespread sexual abuse either criminally or civilly, and the public is obviously interested in this subject. The news coverage and Stern's multiple interviews with the press establish as much. (See generally, Stern RJN, Exhs. 5-14 [media interest in sexual abuse allegations against Tate and his brother].) The first step of the *FilmOn* analysis has been strongly established.

The second step requires a consideration "whether a defendant—through public or private speech or conduct—participated in, or furthered, the discourse that makes an issue one of public interest." (*FilmOn, supra,* 7 Cal.5th at p. 151.) "[W]e reject the proposition that any connection at all—however fleeting or tangential—between the challenged conduct and an issue of public interest would suffice to satisfy the requirements of section 425.16, subdivision (e)(4). . . At a sufficiently high level of generalization, any conduct can appear rationally related to a broader issue of public importance. What a court scrutinizing the nature of speech in the anti-SLAPP context must focus on is the speech at hand, rather than the prospects that such speech may conceivably have indirect consequences for an issue of public concern." (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 625.)

There is a functional relationship here between Stern's statements and the public issue. Her interviews and social media statements are publicizing her case against Tate for his own sexual abuse of her during their relationship. (Tate RJN, ¶3.) The interviews are publicizing her case as related to his ongoing sexual abuse issues. The statements in Exhibit Q to the cross-complaint relate to Stern's allegations, as do the interviews in Tate's request for judicial notice. To the court, these statements furthered the discussion on allegations of sexual impropriety against Tate, a famous man. The second factor of the *FilmOn* analysis is met.

Tate disagrees in opposition, arguing that the fact he is famous is insufficient, standing alone. In support, he relies on *Bernstein v. LaBeouf* (2019) 43 Cal.App.5th 15, where the court held that actor Shia LeBeouf's act of calling a bartender "racist" when he refused to serve LeBeouf's friend drinks, was not a statement intended to further the public debate on racism. (*Id.* at p. 24.) The court distinguished the facts in front of it from *Hall,* arguing that concerned public statements made by Brando's housekeeper in an ongoing and well-publicized probate dispute over Brando's will. (*Id.* at p. 25.) But the facts in front of it were not the same as those in *Hall*: "In sum, neither LaBeouf's statements calling Bernstein a 'racist,' nor LaBeouf's other conduct during the incident at Jerry's, involved a matter of public interest or concern. Rather, LaBeouf's statements stemmed out of an isolated dispute between himself and Bernstein." (*Id.* at p. 26.)

The *Bernstein* analysis does not apply here. While the original dispute between Stern and Tate was private, it occurred in the context of ongoing and widespread media interest in allegations of rape and sex trafficking against Tate and his brother. (Stern RJN, Exhs. 5-15.) As such, Stern's addition to that ongoing context pushed the conversation on sexual abuse by famous men, and Tate in particular, forward. Tate ignores this context and hyper-focuses on Stern's argument that he is a celebrity. But that is not the full scope of her argument.

Tate's reliance on *Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122 is similarly misguided. He uses it to argue that "false allegations of criminal conduct are not subject to the anti-SLAPP statute" but that oversimplifies the *Weinberg* court's analysis. The real meat of the analysis was that this was a private dispute between private parties that did not concern a matter of public interest, and *in that context*, false allegations of criminal conduct were not subject to section 425.16. (Id. at pp. 1132-1134.) "Simply stated, causes of action arising out of false allegations of criminal conduct, *made under circumstances like those alleged in this case*, are not subject to the anti-SLAPP statute." (*Id*. at p. 1136, emphasis added.) Tate fails to undertake the requisite analysis establishing that his situation is like the one in *Weinberg*.

Finally, *Rothman v. Jackson* (1996) 49 Cal.App.4th 1134 does not change the outcome either. That case dealt with the litigation privilege and whether public statements during a press conference were protected. But the analysis here concerns subdivisions (e)(3) and (4), which does not implicate the litigation privilege. Only the analysis under (e)(1) and (2) shares some similarities with the litigation privilege.[6] *Rothman* is inapplicable. The burden therefore shifts as to all of the media statements at issue.

**B. Likelihood of Success**

If the defendant makes a threshold showing that the challenged cause of action is one arising from protected activity, the burden shifts to the plaintiff to establish a likelihood of prevailing on the complaint. (See Code Civ. Proc., § 425.16, subd. (b)(1).) "[T]he plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie

[6] Stern could have argued that (e)(1) and (2) covered the statements about her case to the press. However, she did not, so *Rothman*'s analysis does not apply.

showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' (*Matson v. Dvorak* (1995) 40 Cal.App.4th 539, 548.)" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821, parallel citation omitted.) A trial court does not weigh the evidence or its comparative strength. (*Ibid*.) However, a trial court "should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." (*Ibid*.)

**1. Litigation Privilege**

Stern asserts that the filings of the complaint and DVRO are covered by the litigation privilege, such that portions of the first, third, and fourth causes of action fail, and fifth cause of action fails in its entirety. The court agrees. In analyzing this issue, Stern must demonstrate a probability of prevailing on the merits by making a *prima facie* showing that the privilege applies, which she essentially did in prong one. Then Tate must produce admissible evidence sufficient to overcome the claimed privilege. The litigation privilege (also referred to as the "absolute" privilege) is codified in Civil Code section 47, subdivision (b) and "immuniz[es] participants from liability for torts arising from communications made during judicial proceedings[.]" (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 214.) The privilege applies to any "communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." (*Id.* at p. 212.) "The privilege is 'absolute in nature, applying "to *all* publications, irrespective of their maliciousness." ' (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.) ' "Any doubt about whether the privilege applies is resolved in favor of applying it." ' (*Finton Construction, supra*, 238 Cal.App.4th at p. 212.)" (*Optional Capital, supra,* 18 Cal.App.5th at p. 116, parallel citations omitted, emphasis by *Action Apartment* Court.)

Stern establishes application of the privilege simply by pointing to the cross-complaint, which seeks to hold her liable for statements she made in her complaint and DVRO. The statements in the complaint and DVRO are privileged, even if they were made maliciously. Stern's intent in making those purportedly malicious statements is immaterial because she is

afforded wide protection under the litigation privilege where the statements are contained in publications before the court. (See *Weeden v. Hoffman* (2021) 70 Cal.App.5th 269, 288.)

Tate's argument in opposition about malice is therefore of no effect. He fails to engage with authority indicating that the litigation privilege applies irrespective of malice. This is a well-established principle in our jurisprudence. (See, e.g., *Silberg v. Anderson* (1990) 50 Cal.3d 205; *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232.) The motion is GRANTED to the portions of the first, third, and fourth causes of action, and fifth cause of action in its entirety, that are predicated on the filing of the complaint, DVRO, and false statements therein. That is not to say that Tate is without a remedy if what he claims is true. But the remedy is to file a malicious prosecution action after a judgment in his favor on the merits. His remedy is not to bring a cross complaint for filing the original complaint or other court filings. (He will have some trouble seeking to file a malicious prosecution case relating to the DVRO as that case resolved by agreement, not by a judgment in Tate's favor.)

Given that, the court sees no way that Tate can prevail in his case as it relates to comments or statements made by Stern in court filings. She is protected by the litigation privilege, even if what she said was knowingly false. The motion is therefore GRANTED to that extent.

**2. Media Statements**

Tate argues that his claims predicated on Stern's false statements to the press survive the SMS. Preliminarily, the reply argues that Tate fails to make his showing on the second prong because he has no admissible evidence in support. As the court previously detailed, his declaration is admissible. The question, then, is whether that declaration is sufficient. It is in some regards, but not others.

**a. Slander and Libel Per Se**

The court starts with the first and second causes of action for defamation, both libel per se and slander per se. " 'Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation.' (Civ. Code, § 45.) There are generally two types of libel recognized

in California—libel per se and libel *per quod*. . . [¶] The distinction has been described as follows: 'If no reasonable reader would perceive in a false and unprivileged publication a meaning which tended to injure the subject's reputation in any of the enumerated respects, then there is no libel at all. If such a reader would perceive a defamatory meaning without extrinsic aid beyond his or her own intelligence and common sense, then (under section 45a and the cases, such as *MacLeod*, which have construed it) there is a libel *per se*. But if the reader would be able to recognize a defamatory meaning only by virtue of his or her knowledge of specific facts and circumstances, extrinsic to the publication, which are not matters of common knowledge rationally attributable to all reasonable persons, then (under the same authorities) the libel cannot be libel per se but will be libel *per quod*.' (*Barnes-Hind, Inc. v. Superior Court* (1986) 181 Cal.App.3d 377, 386-387.)" (*Bartholomew v. YouTube, LLC.* (2017) 17 Cal.App.5th 1217, 1226–1227, parallel citations omitted.) "With respect to slander per se, the trial court decides if the alleged statement falls within Civil Code section 46, subdivisions (1) through (4). It is then for the trier of fact to determine if the statement is defamatory." (*Regalia v. The Nethercutt Collection* (2009) 172 Cal.App.4th 361, 368.) Civil Code section 46 states that publications that charge "any person with crime, or with having been indicted, convicted, or punished for crime" and/or tend "directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits" constitute defamation. (Civ. Code, § 46, subds. (1), (3).)

Tate's declaration and Stern's statements to the media establish both minimal merit as to libel and slander per se. Any person, in reading or hearing this statement, would understand its defamatory nature (if they are false), given that she claims he raped her. Sexual assault is a crime, and it would subject Tate to hate and condemnation. This is exemplified by the tone of some of the articles discussing the other sexual assault cases against Tate. (Stern RJN, Exhs. 7, 9.) The court rejects, at this stage, Stern's argument that Tate is so nefarious that in his case, these conclusions would not damage his reputation. There has been no showing to that effect such that the court could so rule as a matter of law.

Tate also establishes a disputed issue whether Stern's statements constitute false assertions of fact. "It is the province of the court to determine whether a statement is actionable as a statement of fact susceptible of a defamatory meaning, versus a nonactionable statement of opinion privileged under the First Amendment. '[I]t is a question of law for the court whether a challenged statement is reasonably susceptible of an interpretation which implies a provably false assertion of actual fact. If that question is answered in the affirmative, the jury may be called upon to determine whether such an interpretation was in fact conveyed.' (*Kahn v. Bower* (1991) 232 Cal.App.3d 1599, 1608; see *Gregory v. McDonnell Douglas Corp.* (1976) 17 Cal.3d 596, 601.)" (*John Doe 2 v. Superior Court* (2016) 1 Cal.App.5th 1300, 1312, parallel citations omitted.)

The court agrees that these read as assertions of fact and there is at least a triable issue of fact as to whether they are false. In the interviews and in her social media posts, Stern claims that Tate raped and hit her. "A court construing an allegedly defamatory statement must consider the statement in the context in which it was made. 'In determining whether statements are of a defamatory nature, and therefore actionable, " 'a court is to place itself in the situation of the hearer or reader, and determine the sense or meaning of the language of the complaint for libelous publication according to its natural and popular construction.' That is to say, the publication is to be measured not so much by its effect when subjected to the critical analysis of a mind trained in the law, but by the natural and probable effect upon the mind of the average reader." ' (*Morningstar, Inc. v. Superior Court* (1994) 23 Cal.App.4th 676, 688.)" (*John Doe 2, supra,* 1 Cal.App.5th at p. 1312, parallel citations omitted.) Stern's statements are clear cut so the analysis here is not difficult.

A plaintiff in a defamation action must prove the statement is false. (*Christian Research Institute v. Alnor* (2007) 148 Cal.App.4th 71, 81.) Tate presents his own declaration stating he did not sexually assault Stern and that there are inconsistencies in her presentation, money-seeking behavior, and history with men. (Tate Decl., ¶¶2-16.) That is enough to defeat the motion.

Next, there is the question of actual malice. Because of Tate's celebrity status, and the public interest of the case, he must present enough evidence to support an inference that Stern "made the challenged statements with 'actual malice' as that term is used in *Sullivan, supra,* 376 U.S. at pages 279–280, i.e., 'with knowledge that it was false or with reckless disregard of whether it was false or not.' " (*Vogel v. Felice* (2005) 127 Cal.App.4th 1006, 1017, parallel citations omitted.) "A defamation plaintiff may rely on inferences drawn from circumstantial evidence to show actual malice. (*Reader's Digest, supra,* 37 Cal.3d at pp. 257–258.) 'A failure to investigate [fn. omitted] [citation], anger and hostility toward the plaintiff [citation], reliance upon sources known to be unreliable [citations], or known to be biased against the plaintiff [citations]—such factors may, in an appropriate case, indicate that the publisher himself had serious doubts regarding the truth of his publication.' (*Id.* at p. 258.) Thus, malice may be inferred where, for example, 'a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call.' (*St. Amant v. Thompson* (1968) 390 U.S. 727, 732.) Similarly, an inference of malice may be drawn 'when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation[,] . . . [or] where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports. [fn. omitted.]' (*Ibid.*) Conversely, '[t]he failure to conduct a thorough and objective investigation, standing alone, does not prove actual malice, nor even necessarily raise a triable issue of fact on that controversy. [Citations.] Similarly, mere proof of ill will on the part of the publisher may likewise be insufficient. [Citation.]' (*Reader's Digest, supra,* 37 Cal.3d at p. 258.)" (*Christian Research, supra,* 148 Cal.App.4th at pp. 84–85, parallel citations omitted.)

Tate points to the history of his interactions with Stern. He argues that she approached him for money and that is the defining characteristic of her relationships with men. (Tate Decl., ¶¶2-7.) All their interactions were consensual, he emphasizes, and he notes that Stern has fetishes that indicate she was okay with the nature of their sexual encounters. (*Id*. at ¶10.) This entire thing is a scam, he says, because on March 10, they only argued about her past manipulative behavior towards men, and her patterns of extortion and threats. (*Id*. at ¶10.) After this argument, she left and filed this lawsuit not long thereafter. (*Ibid*.) In Tate's view, this action is just another

false allegation in the line of false allegations she has made. This evidence might be sufficient to support a finding of actual malice, at least at this stage. But more telling is his declaration. The allegations Stern makes are not inferences she draws from other things; they are statements of fact relating to things she claims were done directly to her by Tate. If that is false, a jury could easily conclude that Stern knew they were false at the time, and that is enough.

The court recognizes that Stern has the exact opposite view on their relationship and asserts that her allegations are true. But the second prong operates like a motion for summary judgment and once there is a triable issue of material fact, that ends the analysis. "For purposes of this inquiry, 'the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant (§ 425.16, subd. (b)(2)); though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.' (*Wilson v. Parker, Covert & Chidester, supra,* 28 Cal.4th at p. 821.)" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291, parallel citations omitted.)

And that is what has occurred here. Stern has a declaration stating that she was assaulted and raped by Tate. Tate has a declaration stating she was not and she is a liar. That would be enough to get past summary judgment, and it is enough to get past the SMS motion. The motion is therefore DENIED as to the first and second causes of action to the extent they rely on statements to the media and on her social media accounts.

**b. IIED**

Tate's showing on the IIED claim is similar. " ' "[T]o state a cause of action for intentional infliction of emotional distress a plaintiff must show: (1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." ' (*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1259, quoting *Trerice v. Blue Cross of California* (1989) 209 Cal.App.3d 878,

883.)" (*Vasquez v. Franklin Management Real Estate Fund, Inc.* (2013) 222 Cal.App.4th 819, 832, parallel citations omitted.)

Tate does not present direct evidence on the element of severe emotional distress. Tate's declaration is silent on this issue. (See generally, Tate Decl.) "Severe emotional distress means ' "emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." ' (*Girard v. Ball* (1981) 125 Cal.App.3d 772, 787–788, citing *Fletcher v. Western Life Ins. Co.* (1970) 10 Cal.App.3d 376, 397; see Rest.2d Torts, § 46, com. j, p. 78 ['distress must be reasonable and justified under the circumstances'].)" (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1004, parallel citations omitted.) "Moreover, ' "[i]t is for *the court* to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed." [Citation.]' (*Fletcher, supra,* 10 Cal.App.3d at p. 397, italics added.)" (*Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1376, parallel citations omitted, emphasis by *Wong* court.) But that said, the court can infer it. While Stern alleges that Tate loves being portrayed as Stern portrays him, Tate denies that these things happened. The court is not prepared to say as a matter of law that if allegations are made against Tate that are knowingly false when made it could not cause him severe emotional distress. The required distress is a reasonable inference to draw from the evidence in the record. Further, the court is mindful that, like on a motion for summary judgment, the court must read the evidence in opposition to the motion liberally and draw all reasonable inferences in favor of the opposing party.

Therefore, even with Tate's lack of direct evidence, this cause of action must fail. Accordingly, the motion is DENIED as to the IIED claim.

**c. False Light**

" 'False light is a species of invasion of privacy, based on publicity that places a plaintiff before the public in a false light that would be highly offensive to a reasonable person, and where the defendant knew or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed.' (*Price v. Operating Engineers Local Union No. 3* (2011) 195 Cal.App.4th 962, 970.) 'A "false light" claim, like libel, exposes a person to

hatred, contempt, ridicule, or obloquy and assumes the audience will recognize it as such.' (*M.G. v. Time Warner, Inc.* (2001) 89 Cal.App.4th 623, 636.) ' "A 'false light' cause of action is in substance equivalent to a libel claim, and should meet the same requirements of the libel claim, including proof of malice [where malice is required for the libel claim]." ' (*Medical Marijuana, Inc. v. ProjectCBD.com* (2016) 6 Cal.App.5th 602, 616; accord, *Aisenson v. American Broadcasting Co.* (1990) 220 Cal.App.3d 146, 161; see generally *Fellows v. National Enquirer, Inc.* (1986) 42 Cal.3d 234 [holding statutory limitations on defamation actions apply when a false light action is based on publication that is defamatory].) Indeed, '[w]hen a false light claim is coupled with a defamation claim, the false light claim is essentially superfluous, and stands or falls on whether it meets the same requirements as the defamation cause of action.' (*Eisenberg v. Alameda Newspapers, Inc.* (1999) 74 Cal.App.4th 1359, 1385, fn. 13.)" (*Jackson v. Mayweather* (2017) 10 Cal.App.5th 1240, 1264, parallel citations omitted.)

The false light claim follows the analysis on the defamations claims. The motion as to those claims was denied, and so the motion as to this claim is DENIED as well.

**V. Conclusion**

The motion is GRANTED as to the fifth cause of action for abuse of process. The motion is GRANTED IN PART as to the first cause of action for libel per se, second cause of action for slander per se, third cause of action for IIED, and fourth cause of action for invasion of privacy (false light) to the extent of the allegations regarding the complaint and DVRO (and purported false statements therein). The motion is DENIED as to the remainder.

DATED: December 11, 2025

Hon. Mark H. Epstein
Judge of the Superior Court

# EXHIBIT B

CIV-100

ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO: 325156
NAME: Jason P. Koch
FIRM NAME: The Law Office of Jason P. Koch
STREET ADDRESS: 3 W. Carrillo St., Ste. 216
CITY: Santa Barbara STATE: CA ZIP CODE: 93101
TELEPHONE NO.: (805) 695-4527 FAX NO.: (805) 695-4528
E-MAIL ADDRESS: jason@jasonkochlaw.com
ATTORNEY FOR (name): EMORY ANDREW TATE III

FOR COURT USE ONLY

**Electronically FILED by Superior Court of California, County of Los Angeles 4/21/2026 9:18 AM David W. Slayton, Executive Officer/Clerk of Court, By A. Mejia, Deputy Clerk**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** LOS ANGELES
STREET ADDRESS: 1725 Main Street
MAILING ADDRESS: 1725 Main Street
CITY AND ZIP CODE: Santa Monica 90401
BRANCH NAME: Santa Monica Courthouse

Plaintiff/Petitioner: Brianna Stern
Defendant/Respondent: Emory Andrew Tate III

**REQUEST FOR (Application)** [x] **Entry of Default** [ ] **Clerk's Judgment** [ ] **Court Judgment**

CASE NUMBER: 25SMCV01570

**Not for use in actions under the Fair Debt Buying Practices Act (Civ. Code, § 1788.50 et seq.)**; (see form CIV-105)

1. TO THE CLERK: On the complaint or cross-complaint filed
   a. on *(date):* August 12, 2025
   b. by *(name):* Emory Andrew Tate III
   c. [x] Enter default of defendant *(names):*
      Brianna Stern (Cross-Defendant)
   d. [ ] I request a court judgment under Code of Civil Procedure sections 585(b), 585(c), 989, etc., against defendant *(names):*

      *(Testimony required. Apply to the clerk for a hearing date, unless the court will enter a judgment on an affidavit under Code Civ. Proc., § 585(d).)*
   e. [ ] Enter clerk's judgment
      (1) [ ] for restitution of the premises only and issue a writ of execution on the judgment. Code of Civil Procedure section 1174(c) does not apply. (Code Civ. Proc., § 1169.)
         [ ] Include in the judgment all tenants, subtenants, named claimants, and other occupants of the premises. The *Prejudgment Claim of Right to Possession* was served in compliance with Code of Civil Procedure section 415.46.
      (2) [ ] under Code of Civil Procedure section 585(a). *(Complete the declaration under Code Civ. Proc., § 585.5 on the reverse (item 5).)*
      (3) [ ] for default previously entered on *(date):*

2. **Judgment to be entered.**

| | Amount | Credits acknowledged | Balance |
|---|---|---|---|
| a. Demand of complaint | $ | $ | $ |
| b. Statement of damages* | | | |
| (1) Special | $ | $ | $ |
| (2) General | $ | $ | $ |
| c. Interest | $ | $ | $ |
| d. Costs *(see reverse)* | $ | $ | $ |
| e. Attorney fees | $ | $ | $ |
| f. **TOTALS** | $ | $ | $ |

   g. **Daily damages** were demanded in complaint at the rate of: $ per day beginning *(date):*

*(* Personal injury or wrongful death actions; Code Civ. Proc., § 425.11.)*

3. [ ] *(Check if filed in an unlawful detainer case.)* **Legal document assistant or unlawful detainer assistant** information is on the reverse *(complete item 4).*

Date: April 21, 2026

Jason P. Koch
(TYPE OR PRINT NAME)

[signature: Jason Koch]
(SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

***FOR COURT USE ONLY***
(1) [✓] Default entered as requested on *(date):* 04/21/2026
(2) [ ] Default NOT entered as requested *(state reason):*
Clerk, by A. Mejia, Deputy



Form Adopted for Mandatory Use
Judicial Council of California
CIV-100 [Rev. January 1, 2023]

**REQUEST FOR ENTRY OF DEFAULT (Application to Enter Default)**

Code of Civil Procedure, §§ 585–587, 1169
*www.courts.ca.gov*

| Plaintiff/Petitioner: Brianna Stern<br>Defendant/Respondent: Emory Andrew Tate III | CASE NUMBER:<br>25SMCV01570 |
|---|---|

4. **Legal document assistant or unlawful detainer assistant (Bus. & Prof. Code, § 6400 et seq.).** A legal document assistant or unlawful detainer assistant [ ] did [x] did **not** for compensation give advice or assistance with this form. If declarant has received **any** help or advice for pay from a legal document assistant or unlawful detainer assistant, state:
   a. Assistant's name:
   b. Street address, city, and zip code:
   c. Telephone no.:
   d. County of registration:
   e. Registration no.:
   f. Expires on *(date):*

5. [x] **Declaration under Code Civ. Proc., § 585.5** *(for entry of default under Code Civ. Proc., § 585(a)).* This action
   a. [ ] is [x] is not on a contract or installment sale for goods or services subject to Civ. Code, § 1801 et seq. (Unruh Act).
   b. [ ] is [x] is not on a conditional sales contract subject to Civ. Code, § 2981 et seq. (Rees-Levering Motor Vehicle Sales and Finance Act).
   c. [ ] is [x] is not on an obligation for goods, services, loans, or extensions of credit subject to Code Civ. Proc., § 395(b).

6. **Declaration of mailing (Code Civ. Proc., § 587).** A copy of this *Request for Entry of Default* was
   a. [ ] **not mailed** to the following defendants, whose addresses are unknown to plaintiff or plaintiff's attorney *(names):*
   b. [x] **mailed** first-class, postage prepaid, in a sealed envelope addressed to each defendant's attorney of record or, if none, to each defendant's last known address as follows:
      (1) Mailed on *(date):* April 21, 2026
      (2) To *(specify names and addresses shown on the envelopes):*
      David Fortney, THE BUZBEE LAW FIRM
      J.P. Morgan Chase Tower, 600 Travis, Suite 7500
      Houston, Texas 77002

I declare under penalty of perjury under the laws of the State of California that the foregoing items 4, 5, and 6 are true and correct.

Date: April 21, 2026

Jason P. Koch
(TYPE OR PRINT NAME)

▶ *[signature]*
(SIGNATURE OF DECLARANT)

7. **Memorandum of costs** *(required if money judgment requested).* Costs and disbursements are as follows (Code Civ. Proc., § 1033.5):
   a. Clerk's filing fees . . . . . . . . . . . . . . . . . . . . $
   b. Process server's fees . . . . . . . . . . . . . . . . . $
   c. Other *(specify):* $
   d. $
   e. **TOTAL** . . . . . . . . . . . . . . . . . . . . . . . . . . . $ ____________
   f. [ ] Costs and disbursements are waived.
   g. I am the attorney, agent, or party who claims these costs. To the best of my knowledge and belief this memorandum of costs is correct and these costs were necessarily incurred in this case.

I declare under penalty of perjury under the laws of the State of California that the foregoing item 7 is true and correct.

Date:

(TYPE OR PRINT NAME)

▶
(SIGNATURE OF DECLARANT)

| Plaintiff/Petitioner: Brianna Stern<br>Defendant/Respondent: Emory Andrew Tate III | CASE NUMBER:<br>25SMCV01570 |
|---|---|

8. **Declaration of nonmilitary status** *(required for a judgment).*
No defendant/respondent named in item 1c is in the military service of the United States as defined by either the Servicemembers Civil Relief Act (see 50 U.S.C. § 3911(2)) or California Military and Veterans Code sections 400 and 402(f).

I know that no defendant/respondent named in item 1c is in the U.S. military service because *(check all that apply)*:

a. [x] the search results that I received from *https://scra.dmdc.osd.mil/* say the defendant/respondent is not in the U.S. military service.
b. [ ] I am in regular communication with the defendant/respondent and know that they are not in the U.S. military service.
c. [ ] I recently contacted the defendant/respondent, and they told me that they are not in the U.S. military service.
d. [ ] I know that the defendant/respondent was discharged from U.S. military service on or about *(date):*
e. [ ] the defendant/respondent is not eligible to serve in the U.S. military because they are:
[ ] incarcerated [ ] a business entity
f. [ ] other *(specify):*

**Note**

- U.S. military status can be checked online at *https://scra.dmdc.osd.mil/*.
- If the defendant/respondent is in the military service, or their military status is unknown, the defendant/respondent is entitled to certain rights and protections under federal and state law before a default judgment can be entered.
- For more information, see *https://selfhelp.courts.ca.gov/military-defaults*.

I declare under penalty of perjury under the laws of the State of California that the foregoing item 8 is true and correct.

Date: April 21, 2026

Jason P. Koch
(TYPE OR PRINT NAME)

[signature: Jason Koch]
(SIGNATURE OF DECLARANT)

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

| | |
|---|---|
| COURTHOUSE ADDRESS:<br>Santa Monica Courthouse<br>1725 Main Street, Santa Monica, CA 90401 | CASE NUMBER:<br>25SMCV01570 |
| PLAINTIFF:<br>BRIANNA STERN | |
| DEFENDANT:<br>EMORY ANDREW TATE, III | DEPARTMENT/UNIT<br>I |
| **NOTICE OF REJECTION DEFAULT/CLERK'S JUDGMENT** | TELEPHONE NUMBER |

Your Request for Entry of Default and/or Clerk's Judgment, Judicial Council form CIV-100, submitted on 04/08/2026 is rejected for the following reason(s):

**Request for Entry of Default**

BRIANNA STERN
*No Proof of Service

Please return: ☑ a new Request for Entry of Default form. ☑ additional document(s) required to process your request.

When you respond to this Notice of Rejection, include a stamped, self-addressed return envelope, DO NOT include more than one copy of any document to be conformed. ***Include a copy of this form when you return your documents.***

David W. Slayton, Executive Officer / Clerk of Court

Dated: 04/10/2026

By: T. Anderson
Deputy Clerk

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Santa Barbara, State of California. I am over the age of eighteen years and not a party to the within action. My business address is 3 W. Carrillo Street, Suite 216, Santa Barbara, California, 93101. On August 12, 2025, I served the following document(s) described as **VERIFIED CROSS-COMPLAINT FOR DAMAGES** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

☐ **BY U.S. POSTAL SERVICE:** This document was served by United States mail. I enclosed the document in a sealed envelope or package addressed to the person(s) at the address(es) above and placed the envelope(s) for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice of collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service at Santa Barbara, California, in a sealed envelope with postage fully paid.

☐ **BY FACSIMILE:** The document(s) were served by facsimile. The facsimile transmission was without error and completed prior to 5:00 p.m. A copy of the transmission report is available upon request.

☐ **BY OVERNIGHT DELIVERY:** I enclosed the above-described document in (an) envelope(s) of a type designated by the express service carrier for overnight delivery on the next business day with delivery fees fully pre-paid or provided for and addressed as set forth on the attached Service List. I ☐ placed the above-described envelope into a box or other facility regularly maintained by the express service carrier/☐ delivered the above-described envelope to an authorized courier or driver authorized by the express service carrier to receive the documents.

☐ **BY HAND DELIVERY:** The document(s) were left at the address indicated on the Service List, below.

☒ **BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 12, 2025, at Santa Barbara, California.

Jason P. Koch

**SERVICE LIST**

| | |
|---|---|
| David Fortney<br>THE BUZBEE LAW FIRM<br>J.P. Morgan Chase Tower<br>600 Travis, Suite 7500<br>Houston, Texas 77002<br>dfortney@txattorneys.com | Attorney for Plaintiff, Brianna Stern |

# EXHIBIT C

Language Access
English

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Past Proceedings

| | |
|---|---|
| CASE INFORMATION: | 25SMCV01570 |
| Case Title: | BRIANNA STERN VS EMORY ANDREW TATE, III |
| Filing Courthouse: | Santa Monica Courthouse |
| Filing Date: | 3/27/2025 |
| Case Type: | Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) (General Jurisdiction) |
| Status: | Pending |

Click here to access document images for this case.

If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page

Print New Search

## FUTURE HEARINGS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Past Proceedings

| | | | | |
|---|---|---|---|---|
| 6/7/2027 | 08:30 | Department I | 1725 Main Street, Santa Monica, CA 90401 | Final Status Conference |
| 6/14/2027 | 10:30 | Department I | 1725 Main Street, Santa Monica, CA 90401 | Jury Trial |

## PARTY INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Past Proceedings

| | |
|---|---|
| FORTNEY DAVID | Attorney for Cross-Defendant |
| KOCH JASON P. | Attorney for Cross-Complainant |
| STERN BRIANNA | Plaintiff |
| STERN BRIANNA | Cross-Defendant |
| TATE EMORY ANDREW III | Cross-Complainant |
| TATE EMORY ANDREW III | Defendant |

## DOCUMENTS FILED

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Past Proceedings

| | | |
|---|---|---|
| 4/21/2026 | Request for Entry of Default / Judgment | Filed by EMORY ANDREW TATE, III (Cross-Complainant) |
| 4/10/2026 | Clerks Certificate of Service By Electronic Service | Filed by Clerk |
| 4/10/2026 | Notice of Rejection Default/Clerk's Judgment | Filed by Clerk |
| 4/8/2026 | Request for Entry of Default / Judgment | Filed by EMORY ANDREW TATE, III (Cross-Complainant) |
| 1/6/2026 | Clerks Certificate of Service By Electronic Service | Filed by Clerk |
| 1/6/2026 | Minute Order (Hearing on Motion for Sanctions and Protective Order for Pres...) | Filed by Clerk |
| 12/30/2025 | Reply Brief ISO Motion for Sanctions | Filed by BRIANNA STERN (Plaintiff) |
| 12/22/2025 | Declaration of Andrew Tate ISO Opposition to Motion for Sanctions | Filed by EMORY ANDREW TATE, III (Defendant) |
| 12/22/2025 | Declaration of Jason Koch ISO Opposition to Motion for Sanctions | Filed by EMORY ANDREW TATE, III (Defendant) |
| 12/22/2025 | Objection Tate's Evidentiary Objections to Declarations of Stern and Fortney RE Motion for Sanctions | Filed by EMORY ANDREW TATE, III (Defendant) |

| | | |
|---|---|---|
| 12/22/2025 | Opposition to Motion for Leave to Amend Complaint | Filed by EMORY ANDREW TATE, III (Defendant) |
| 12/22/2025 | Opposition to Stern's Motion for Sanctions | Filed by EMORY ANDREW TATE, III (Defendant) |
| 12/11/2025 | Minute Order (Hearing on Special Motion to Strike under CCP Section 425.16 ...) | Filed by Clerk |
| 12/11/2025 | Order Regarding Cross-Defendant Brianna Stern's Special Motion to Strike | Filed by Clerk |
| 12/10/2025 | Declaration Tate/ ISO Opposition to Anti-SLAPP Motion | Filed by EMORY ANDREW TATE, III (Cross-Complainant) |
| 12/10/2025 | Ex Parte Application for Leave to Consider Supplemental Declaration or Continue Hearing | Filed by EMORY ANDREW TATE, III (Cross-Complainant) |
| 12/9/2025 | Response Tate's Responses to Stern's Evidentiary Objections to McBride Declaration | Filed by EMORY ANDREW TATE, III (Cross-Complainant) |
| 12/8/2025 | Minute Order (Hearing on Ex Parte Application for Admission Pro Hac Vice or...) | Filed by Clerk |
| 12/5/2025 | Ex Parte Application for Admission Pro Hac Vice or Advancing and Shortening Time for Hearing | Filed by EMORY ANDREW TATE, III (Defendant) |
| 12/5/2025 | Motion to Be Admitted Pro Hac Vice | Filed by EMORY ANDREW TATE, III (Defendant) |
| 12/4/2025 | Objection - Evidentiary Objections to the Declaration of Joseph McBride | Filed by BRIANNA STERN (Plaintiff) |
| 12/4/2025 | Reply Brief ISO Special Motion to Strike Under Code of Civil Procedure Section 425.16 (anti-SLAPP) | Filed by BRIANNA STERN (Plaintiff) |
| 11/26/2025 | Declaration Declaration of Joseph McBride | Filed by EMORY ANDREW TATE, III (Cross-Complainant) |
| 11/26/2025 | Declaration in Support of Motion for Leave to Amend Complaint | Filed by BRIANNA STERN (Plaintiff) |
| 11/26/2025 | Declaration of Brianna Stern | Filed by BRIANNA STERN (Plaintiff) |
| 11/26/2025 | Declaration of David Fortney | Filed by BRIANNA STERN (Plaintiff) |
| 11/26/2025 | Memorandum of Points & Authorities | Filed by EMORY ANDREW TATE, III (Cross-Complainant) |
| 11/26/2025 | Motion for Leave to Amend Complaint | Filed by BRIANNA STERN (Plaintiff) |
| 11/26/2025 | Motion for Sanctions and Protective Order for Preservation of Evidence (CRS# 5658) | Filed by BRIANNA STERN (Plaintiff) |
| 11/26/2025 | Proof of Service (not Summons and Complaint) | Filed by BRIANNA STERN (Plaintiff) |
| 11/26/2025 | Proof of Service (not Summons and Complaint) | Filed by BRIANNA STERN (Plaintiff) |
| 11/26/2025 | Request for Judicial Notice | Filed by EMORY ANDREW TATE, III (Cross-Complainant) |
| 10/23/2025 | Notice of Posting of Jury Fees | Filed by BRIANNA STERN (Plaintiff) |
| 10/17/2025 | Proof of Service (not Summons and Complaint) | Filed by BRIANNA STERN (Plaintiff) |
| 10/17/2025 | Proof of Service (not Summons and Complaint) | Filed by BRIANNA STERN (Plaintiff) |
| 10/14/2025 | Declaration of Brianna Stern | Filed by BRIANNA STERN (Cross-Defendant) |
| 10/14/2025 | Declaration of David C Fortney | Filed by BRIANNA STERN (Cross-Defendant) |
| 10/14/2025 | Request for Judicial Notice | Filed by BRIANNA STERN (Cross-Defendant) |
| 10/14/2025 | Special Motion to Strike under CCP Section 425.16 (Anti-SLAPP motion) | Filed by BRIANNA STERN (Cross-Defendant) |
| 9/29/2025 | Declaration of Demurring Party in Support of Automatic Extension | Filed by BRIANNA STERN (Cross-Defendant) |
| 9/24/2025 | Minute Order (Case Management Conference) | Filed by Clerk |
| 9/23/2025 | Case Management Statement | Filed by EMORY ANDREW TATE, III (Cross-Complainant) |
| 9/22/2025 | Case Management Statement | Filed by BRIANNA STERN (Plaintiff) |
| 8/29/2025 | Notice of Ruling | Filed by EMORY ANDREW TATE, III (Defendant) |
| 8/22/2025 | Certificate of Mailing for (Non-Appearance Case Review Re: Notice of Related Case) of 08/22/2025 | Filed by Clerk |
| 8/22/2025 | Minute Order (Non-Appearance Case Review Re: Notice of Related Case) | Filed by Clerk |
| 8/18/2025 | Notice of Related Case | Filed by EMORY ANDREW TATE, III (Defendant) |
| 8/13/2025 | Minute Order (Hearing on Motion to Seal Motion to Seal Portions of Pro Hac ...) | Filed by Clerk |

| | | |
|---|---|---|
| **8/13/2025** | Order [Proposed] Order on Motion to Seal Portions of PHV Application - Word Version | Filed by EMORY ANDREW TATE, III (Defendant) |
| **8/13/2025** | Order on Motion to File Portions of Application for Admission Pro Hac Vice Under Seal | Filed by EMORY ANDREW TATE, III (Defendant) |
| **8/12/2025** | Answer | Filed by EMORY ANDREW TATE, III (Defendant) |
| **8/12/2025** | Cross-Complaint | Filed by EMORY ANDREW TATE, III (Defendant) |
| **7/18/2025** | Motion to Seal Notice of Motion and Motion to Seal Portions of PHV Application | Filed by EMORY ANDREW TATE, III (Defendant) |
| **7/18/2025** | Notice of Lodging Notice of Lodgment of Application for Admission Pro Hac Vice Conditionally Under Seal | Filed by EMORY ANDREW TATE, III (Defendant) |
| **7/18/2025** | Proof of Service (not Summons and Complaint) | Filed by EMORY ANDREW TATE, III (Defendant) |
| **3/28/2025** | Notice of Case Management Conference | Filed by Clerk |
| **3/27/2025** | Alternative Dispute Resolution Packet | Filed by Clerk |
| **3/27/2025** | Civil Case Cover Sheet | Filed by BRIANNA STERN (Plaintiff) |
| **3/27/2025** | Complaint | Filed by BRIANNA STERN (Plaintiff) |
| **3/27/2025** | Notice of Case Assignment - Unlimited Civil Case | Filed by Clerk |
| **3/27/2025** | Summons on Complaint | Filed by BRIANNA STERN (Plaintiff) |

## PROCEEDINGS HELD

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | **Past Proceedings**

| | | | |
|---|---|---|---|
| **1/6/2026 09:00 AM** | Department I | Hearing on Motion for Leave to Amend | Not Held - Taken Off Calendar by Party |
| **1/6/2026 09:00 AM** | Department I | Hearing on Motion for Sanctions | Held - Motion Denied |
| **1/6/2026 09:00 AM** | Department I | Hearing on Motion to be Admitted Pro Hac Vice | Held - Motion Granted |
| **12/16/2025 09:00 AM** | Department I | Hearing on Motion to be Admitted Pro Hac Vice | Not Held - Vacated by Court |
| **12/11/2025 09:00 AM** | Department I | Hearing on Special Motion to Strike under CCP Section 425.16 (Anti-SLAPP motion) | Held |
| **12/11/2025 08:30 AM** | Department I | Hearing on Ex Parte Application | Held - Motion Denied |
| **12/8/2025 08:30 AM** | Department I | Hearing on Ex Parte Application | Held |
| **11/13/2025 09:00 AM** | Department I | Hearing on Motion to be Admitted Pro Hac Vice | Not Held - Vacated by Court |
| **10/23/2025 09:00 AM** | Department I | Hearing on Motion to be Admitted Pro Hac Vice | Not Held - Vacated by Court |
| **9/24/2025 09:00 AM** | Department I | Hearing on Motion to be Admitted Pro Hac Vice | Not Held - Vacated by Court |
| **9/24/2025 09:00 AM** | Department I | Hearing on Motion to be Admitted Pro Hac Vice | Not Held - Vacated by Court |
| **9/24/2025 09:00 AM** | Department I | Hearing on Motion to be Admitted Pro Hac Vice | Not Held - Vacated by Court |
| **9/24/2025 08:30 AM** | Department I | Case Management Conference | Held |
| **8/22/2025 10:30 AM** | Department I | Non-Appearance Case Review | |
| **8/14/2025 09:00 AM** | Department I | Hearing on Motion to be Admitted Pro Hac Vice | Not Held - Vacated by Court |
| **8/13/2025 09:00 AM** | Department I | Hearing on Motion to Seal | Held - Motion Granted |

| | | | |
|---|---|---|---|
| 8/5/2025 09:00 AM | Department I | Hearing on Motion to be Admitted Pro Hac Vice | Not Held - Taken Off Calendar by Party |

## REGISTER OF ACTIONS

Case Information | **Register Of Actions** | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Past Proceedings

| | |
|---|---|
| **4/22/2026** | Updated -- Request for Entry of Default / Judgment: Filed By: EMORY ANDREW TATE, III (Cross-Complainant); Result: Entered |
| **4/21/2026** | Request for Entry of Default / Judgment; Filed by: EMORY ANDREW TATE, III (Cross-Complainant); As to: BRIANNA STERN (Cross-Defendant) |
| **4/21/2026** | Default entered as to BRIANNA STERN; On the Cross-Complaint filed by EMORY ANDREW TATE, III on 08/12/2025 |
| **4/10/2026** | Clerks Certificate of Service By Electronic Service; Filed by: Clerk |
| **4/10/2026** | Notice of Rejection Default/Clerk's Judgment; Filed by: Clerk |
| **4/8/2026** | Request for Entry of Default / Judgment; Filed by: EMORY ANDREW TATE, III (Cross-Complainant); As to: BRIANNA STERN (Cross-Defendant) |
| **4/8/2026** | ; Default not entered as to BRIANNA STERN; On the Cross-Complaint filed by EMORY ANDREW TATE, III on 08/12/2025 |
| **4/8/2026** | Request for Entry of Default / Judgment; Filed by: EMORY ANDREW TATE, III (Cross-Complainant); As to: BRIANNA STERN (Cross-Defendant) |
| **1/6/2026** | Updated -- Motion for Sanctions and Protective Order for Preservation of Evidence (CRS# 5658): Filed By: BRIANNA STERN (Plaintiff); Result: Denied ; Result Date: 01/06/2026 |
| **1/6/2026** | Minute Order (Hearing on Motion for Sanctions and Protective Order for Pres...) |
| **1/6/2026** | Address for David Fortney (Attorney) updated |
| **1/6/2026** | Clerks Certificate of Service By Electronic Service; Filed by: Clerk; As to: Jason P. Koch (Attorney); David Fortney (Attorney) |
| **1/6/2026** | Hearing on Motion for Sanctions and Protective Order for Preservation of Evidence (CRS# 5658) scheduled for 01/06/2026 at 09:00 AM in Santa Monica Courthouse at Department I updated: Result Date to 01/06/2026; Result Type to Held - Motion Denied |
| **1/6/2026** | Hearing on Motion to be Admitted Pro Hac Vice Defendant and Cross-Complainant Emory Andrew Tate III scheduled for 01/06/2026 at 09:00 AM in Santa Monica Courthouse at Department I updated: Result Date to 01/06/2026; Result Type to Held - Motion Granted |
| **1/5/2026** | Updated -- Motion for Sanctions and Protective Order for Preservation of Evidence (CRS# 5658): Exact Name: Motion for Sanctions and Protective Order for Preservation of Evidence (CRS# 5658) |
| **12/30/2025** | Reply Brief ISO Motion for Sanctions; Filed by: BRIANNA STERN (Plaintiff) |
| **12/30/2025** | Pursuant to the request of moving party, Hearing on Motion for Leave to Amend Complaint scheduled for 01/06/2026 at 09:00 AM in Santa Monica Courthouse at Department I Not Held - Taken Off Calendar by Party on 12/30/2025 |
| **12/22/2025** | Opposition to Stern's Motion for Sanctions; Filed by: EMORY ANDREW TATE, III (Defendant) |
| **12/22/2025** | Objection Tate's Evidentiary Objections to Declarations of Stern and Fortney RE Motion for Sanctions; Filed by: EMORY ANDREW TATE, III (Defendant) |
| **12/22/2025** | Opposition to Motion for Leave to Amend Complaint; Filed by: EMORY ANDREW TATE, III (Defendant) |
| **12/22/2025** | Declaration of Andrew Tate ISO Opposition to Motion for Sanctions; Filed by: EMORY ANDREW TATE, III (Defendant) |
| **12/22/2025** | Declaration of Jason Koch ISO Opposition to Motion for Sanctions; Filed by: EMORY ANDREW TATE, III (Defendant) |
| **12/11/2025** | Updated -- Special Motion to Strike under CCP Section 425.16 (Anti-SLAPP motion): Filed By: BRIANNA STERN (Cross-Defendant); Result: Granted in Part ; Result Date: 12/11/2025 |
| **12/11/2025** | Updated -- Ex Parte Application for Leave to Consider Supplemental Declaration or Continue Hearing: Filed By: EMORY ANDREW TATE, III (Cross-Complainant); Result: Denied ; Result Date: 12/11/2025 |
| **12/11/2025** | Order Regarding Cross-Defendant Brianna Stern's Special Motion to Strike; Filed by: Clerk |
| **12/11/2025** | Minute Order (Hearing on Special Motion to Strike under CCP Section 425.16 ...) |
| **12/11/2025** | Hearing on Special Motion to Strike under CCP Section 425.16 (Anti-SLAPP motion) scheduled for 12/11/2025 at 09:00 AM in Santa Monica Courthouse at Department I updated: Result Date to 12/11/2025; Result Type to Held |
| **12/11/2025** | Hearing on Ex Parte Application for Leave to Consider Supplemental Declaration or Continue Hearing scheduled for 12/11/2025 at 08:30 AM in Santa Monica Courthouse at Department I updated: Result Date to 12/11/2025; Result Type to Held - Motion Denied |
| **12/10/2025** | Ex Parte Application for Leave to Consider Supplemental Declaration or Continue Hearing; Filed by: EMORY ANDREW TATE, III (Cross-Complainant); As to: EMORY ANDREW TATE, III (Cross-Complainant); BRIANNA STERN (Cross-Defendant) |
| **12/10/2025** | Hearing on Ex Parte Application for Leave to Consider Supplemental Declaration or Continue Hearing scheduled for 12/11/2025 at 08:30 AM in Santa Monica Courthouse at Department I |
| **12/10/2025** | Declaration Tate/ ISO Opposition to Anti-SLAPP Motion; Filed by: EMORY ANDREW TATE, III (Cross-Complainant) |

| | |
|---|---|
| **12/9/2025** | Response Tate's Responses to Stern's Evidentiary Objections to McBride Declaration; Filed by: EMORY ANDREW TATE, III (Cross-Complainant) |
| **12/8/2025** | Updated -- Motion to Be Admitted Pro Hac Vice: Filed By: EMORY ANDREW TATE, III (Defendant); Result: Granted ; Result Date: 12/08/2025 |
| **12/8/2025** | Minute Order (Hearing on Ex Parte Application for Admission Pro Hac Vice or...) |
| **12/8/2025** | Hearing on Ex Parte Application for Admission Pro Hac Vice or Advancing and Shortening Time for Hearing scheduled for 12/08/2025 at 08:30 AM in Santa Monica Courthouse at Department I updated: Result Date to 12/08/2025; Result Type to Held |
| **12/5/2025** | Ex Parte Application for Admission Pro Hac Vice or Advancing and Shortening Time for Hearing; Filed by: EMORY ANDREW TATE, III (Defendant); As to: BRIANNA STERN (Plaintiff) |
| **12/5/2025** | Hearing on Ex Parte Application for Admission Pro Hac Vice or Advancing and Shortening Time for Hearing scheduled for 12/08/2025 at 08:30 AM in Santa Monica Courthouse at Department I |
| **12/5/2025** | Motion to Be Admitted Pro Hac Vice; Filed by: EMORY ANDREW TATE, III (Defendant); As to: BRIANNA STERN (Plaintiff) |
| **12/5/2025** | Hearing on Motion to be Admitted Pro Hac Vice scheduled for 01/06/2026 at 09:00 AM in Santa Monica Courthouse at Department I |
| **12/4/2025** | Reply Brief ISO Special Motion to Strike Under Code of Civil Procedure Section 425.16 (anti-SLAPP); Filed by: BRIANNA STERN (Plaintiff) |
| **12/4/2025** | Objection - Evidentiary Objections to the Declaration of Joseph McBride; Filed by: BRIANNA STERN (Plaintiff) |
| **11/27/2025** | Hearing on Motion to be Admitted Pro Hac Vice scheduled for 12/16/2025 at 09:00 AM in Santa Monica Courthouse at Department I Not Held - Vacated by Court on 11/27/2025 |
| **11/26/2025** | Motion for Sanctions; Filed by: BRIANNA STERN (Plaintiff); As to: EMORY ANDREW TATE, III (Defendant) |
| **11/26/2025** | Declaration of David Fortney; Filed by: BRIANNA STERN (Plaintiff) |
| **11/26/2025** | Declaration of Brianna Stern; Filed by: BRIANNA STERN (Plaintiff) |
| **11/26/2025** | Proof of Service (not Summons and Complaint); Filed by: BRIANNA STERN (Plaintiff); As to: EMORY ANDREW TATE, III (Defendant) |
| **11/26/2025** | Motion for Leave to Amend Complaint; Filed by: BRIANNA STERN (Plaintiff) |
| **11/26/2025** | Declaration in Support of Motion for Leave to Amend Complaint; Filed by: BRIANNA STERN (Plaintiff) |
| **11/26/2025** | Proof of Service (not Summons and Complaint); Filed by: BRIANNA STERN (Plaintiff); As to: EMORY ANDREW TATE, III (Defendant) |
| **11/26/2025** | Memorandum of Points & Authorities; Filed by: EMORY ANDREW TATE, III (Cross-Complainant) |
| **11/26/2025** | Declaration Declaration of Joseph McBride; Filed by: EMORY ANDREW TATE, III (Cross-Complainant) |
| **11/26/2025** | Request for Judicial Notice; Filed by: EMORY ANDREW TATE, III (Cross-Complainant) |
| **11/26/2025** | Hearing on Motion for Sanctions scheduled for 01/06/2026 at 09:00 AM in Santa Monica Courthouse at Department I |
| **11/26/2025** | Hearing on Motion for Leave to Amend Complaint scheduled for 01/06/2026 at 09:00 AM in Santa Monica Courthouse at Department I |
| **10/23/2025** | Notice of Posting of Jury Fees; Filed by: BRIANNA STERN (Plaintiff) |
| **10/21/2025** | Hearing on Motion to be Admitted Pro Hac Vice scheduled for 11/13/2025 at 09:00 AM in Santa Monica Courthouse at Department I Not Held - Vacated by Court on 10/21/2025 |
| **10/17/2025** | Proof of Service (not Summons and Complaint); Filed by: BRIANNA STERN (Plaintiff); As to: EMORY ANDREW TATE, III (Defendant) |
| **10/17/2025** | Proof of Service (not Summons and Complaint); Filed by: BRIANNA STERN (Plaintiff); As to: EMORY ANDREW TATE, III (Defendant) |
| **10/15/2025** | Hearing on Special Motion to Strike under CCP Section 425.16 (Anti-SLAPP motion) scheduled for 12/11/2025 at 09:00 AM in Santa Monica Courthouse at Department I |
| **10/14/2025** | Request for Judicial Notice; Filed by: BRIANNA STERN (Cross-Defendant) |
| **10/14/2025** | Declaration of David C Fortney; Filed by: BRIANNA STERN (Cross-Defendant) |
| **10/14/2025** | Declaration of Brianna Stern; Filed by: BRIANNA STERN (Cross-Defendant) |
| **10/14/2025** | Special Motion to Strike under CCP Section 425.16 (Anti-SLAPP motion); Filed by: BRIANNA STERN (Cross-Defendant) |
| **10/3/2025** | Hearing on Motion to be Admitted Pro Hac Vice scheduled for 10/23/2025 at 09:00 AM in Santa Monica Courthouse at Department I Not Held - Vacated by Court on 10/03/2025 |
| **9/29/2025** | Declaration of Demurring Party in Support of Automatic Extension; Filed by: BRIANNA STERN (Cross-Defendant) |
| **9/24/2025** | Final Status Conference scheduled for 06/07/2027 at 08:30 AM in Santa Monica Courthouse at Department I |
| **9/24/2025** | Jury Trial (10 Day Estimate) scheduled for 06/14/2027 at 10:30 AM in Santa Monica Courthouse at Department I |
| **9/24/2025** | Minute Order (Case Management Conference) |
| **9/24/2025** | Case Management Conference scheduled for 09/24/2025 at 08:30 AM in Santa Monica Courthouse at Department I updated: Result Date to 09/24/2025; Result Type to Held |

| | |
|---|---|
| **9/23/2025** | Case Management Statement; Filed by: EMORY ANDREW TATE, III (Cross-Complainant) |
| **9/22/2025** | Case Management Statement; Filed by: BRIANNA STERN (Plaintiff) |
| **9/4/2025** | Hearing on Motion to be Admitted Pro Hac Vice scheduled for 09/24/2025 at 09:00 AM in Santa Monica Courthouse at Department I Not Held - Vacated by Court on 09/04/2025 |
| **8/29/2025** | Notice of Ruling; Filed by: EMORY ANDREW TATE, III (Defendant) |
| **8/27/2025** | Hearing on Motion to be Admitted Pro Hac Vice scheduled for 09/24/2025 at 09:00 AM in Santa Monica Courthouse at Department I Not Held - Vacated by Court on 08/27/2025 |
| **8/22/2025** | Certificate of Mailing for (Non-Appearance Case Review Re: Notice of Related Case) of 08/22/2025; Filed by: Clerk |
| **8/22/2025** | Minute Order (Non-Appearance Case Review Re: Notice of Related Case) |
| **8/21/2025** | Updated -- Notice of Related Case: Filed By: EMORY ANDREW TATE, III (Defendant); Result: Granted ; Result Date: 08/21/2025 |
| **8/20/2025** | Hearing on Motion to be Admitted Pro Hac Vice scheduled for 09/24/2025 at 09:00 AM in Santa Monica Courthouse at Department I Not Held - Vacated by Court on 08/20/2025 |
| **8/18/2025** | Notice of Related Case; Filed by: EMORY ANDREW TATE, III (Defendant) |
| **8/13/2025** | Updated -- Motion to Seal Notice of Motion and Motion to Seal Portions of PHV Application: Filed By: EMORY ANDREW TATE, III (Defendant); Result: Granted ; Result Date: 08/13/2025 |
| **8/13/2025** | Order [Proposed] Order on Motion to Seal Portions of PHV Application - Word Version; Signed and Filed by: EMORY ANDREW TATE, III (Defendant); As to: EMORY ANDREW TATE, III (Defendant) |
| **8/13/2025** | Order on Motion to File Portions of Application for Admission Pro Hac Vice Under Seal; Filed by: EMORY ANDREW TATE, III (Defendant) |
| **8/13/2025** | Minute Order (Hearing on Motion to Seal Motion to Seal Portions of Pro Hac ...) |
| **8/13/2025** | Hearing on Motion to Seal Motion to Seal Portions of Pro Hac Vice Application scheduled for 08/13/2025 at 09:00 AM in Santa Monica Courthouse at Department I updated: Result Date to 08/13/2025; Result Type to Held - Motion Granted |
| **8/12/2025** | Cross-Complaint; Filed by: EMORY ANDREW TATE, III (Defendant); As to: BRIANNA STERN (Plaintiff) |
| **8/12/2025** | Answer; Filed by: EMORY ANDREW TATE, III (Defendant); As to: BRIANNA STERN (Plaintiff) |
| **7/22/2025** | Hearing on Motion to Seal Motion to Seal Portions of Pro Hac Vice Application scheduled for 08/13/2025 at 09:00 AM in Santa Monica Courthouse at Department I |
| **7/18/2025** | Motion to Seal Notice of Motion and Motion to Seal Portions of PHV Application; Filed by: EMORY ANDREW TATE, III (Defendant) |
| **7/18/2025** | Proof of Service (not Summons and Complaint); Filed by: EMORY ANDREW TATE, III (Defendant) |
| **7/18/2025** | Notice of Lodging Notice of Lodgment of Application for Admission Pro Hac Vice Conditionally Under Seal; Filed by: EMORY ANDREW TATE, III (Defendant) |
| **7/10/2025** | Hearing on Motion to be Admitted Pro Hac Vice scheduled for 08/14/2025 at 09:00 AM in Santa Monica Courthouse at Department I Not Held - Vacated by Court on 07/10/2025 |
| **7/2/2025** | Pursuant to the request of moving party, Hearing on Motion to be Admitted Pro Hac Vice scheduled for 08/05/2025 at 09:00 AM in Santa Monica Courthouse at Department I Not Held - Taken Off Calendar by Party on 07/02/2025 |
| **3/28/2025** | Notice of Case Management Conference; Filed by: Clerk |
| **3/28/2025** | Case Management Conference scheduled for 09/24/2025 at 08:30 AM in Santa Monica Courthouse at Department I |
| **3/28/2025** | Case assigned to Hon. Mark H. Epstein in Department I Santa Monica Courthouse |
| **3/27/2025** | Complaint; Filed by: BRIANNA STERN (Plaintiff); As to: EMORY ANDREW TATE, III (Defendant) |
| **3/27/2025** | Summons on Complaint; Issued and Filed by: BRIANNA STERN (Plaintiff); As to: EMORY ANDREW TATE, III (Defendant) |
| **3/27/2025** | Notice of Case Assignment - Unlimited Civil Case; Filed by: Clerk |
| **3/27/2025** | Alternative Dispute Resolution Packet; Filed by: Clerk |
| **3/27/2025** | Civil Case Cover Sheet; Filed by: BRIANNA STERN (Plaintiff); As to: EMORY ANDREW TATE, III (Defendant) |

Back To Top